**In re K.K.C.**

**No. 09–09–00131–CV.**

Court of Appeals of Texas,
Beaumont.

Submitted May 28, 2009.

Decided July 16, 2009.

Fact and for Sanctions. Our decision is based on our own review of the record and applicable legal principles.

James P. Spencer, II, Law Offices of James P. Spencer, II, Lumberton, for relator.

Matthew Taylor Morones, Jennifer Jackson Morones, Dallas J. Barrington, Barrington, Jackson Morones, P.L.L.C., Silsbee, for real party in interest.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Relator, the mother of the minor child L.G.C., filed a petition for writ of mandamus to compel the trial court to vacate temporary orders and to set aside any purported grant of parental rights to the real party in interest. We conditionally grant the writ.

### PROCEDURAL HISTORY

The real party in interest, who is not a parent of the child but previously resided with relator and the child, filed a suit affecting the parent-child relationship (SAPCR) requesting that he and the rela-

tor be appointed joint managing conservators of the child. The relator appeared *pro se*, as did the child's father, and requested time to find an attorney. She explained she could not afford an attorney at that time. The trial court suggested the parties confer. Agreed temporary orders were then signed by the parents, *pro se*, and by the petitioner and his attorney. The temporary orders named relator and the petitioner temporary joint managing conservators. Relator was named the primary managing conservator. The temporary orders gave the petitioner and the child's father visitation rights.

After obtaining an attorney, relator filed motions challenging the petitioner's standing to file the suit. The trial court denied relator's challenge.

### MANDAMUS

■ An appellate court may issue a writ of mandamus to correct an abuse of discretion for which relator has no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A failure by the trial court to apply the law correctly constitutes an abuse of discretion. *Id.* at 840. Where the relator challenges the trial court's subject matter jurisdiction to enter a temporary order in a suit affecting the parent-child relationship, a remedy by appeal is inadequate. *See Little v. Daggett*, 858 S.W.2d 368, 369 (Tex. 1993); *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex.1991); *In re Herring*, 221 S.W.3d 729, 730 (Tex.App.-San Antonio 2007, orig. proceeding) ("Because temporary orders in suits affecting the parent-child relationship are not appealable, a petition for a writ of mandamus is an appropriate means to challenge them."). *See also generally In*

*re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (Mandamus relief is appropriate to set aside temporary orders that divest, in violation of laws, a fit parent of possession of children.).

### STANDING

■ The law of standing focuses on whether a party who has filed an action is a proper party to raise the legal issue presented for adjudication. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). Standing is a component of subject matter jurisdiction. *Id.* at 443; *Hobbs v. Van Stavern*, 249 S.W.3d 1, 3 (Tex.App.-Houston [1st Dist.] 2006, pet. denied); *Dep't of Family & Protective Servs. v. Alternatives in Motion*, 210 S.W.3d 794, 799 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). A party generally cannot confer or obtain standing by consent or agreement. *In re Smith*, 262 S.W.3d 463, 466 (Tex.App.-Beaumont 2008, orig. proceeding).[1] Because the requirement is a component of subject matter jurisdiction, standing to file suit is not conferred or obtained by waiver, and can be challenged at any time. *Tex. Ass'n of Bus.*, 852 S.W.2d at 440, 445; *Sarah v. Primarily Primates, Inc.*, 255 S.W.3d 132, 139 (Tex.App.-San Antonio 2008, pet. denied).

■ In an original suit affecting the parent-child relationship in which the petitioner seeks managing conservatorship, the question of standing is a threshold issue. *In re M.P.B.*, 257 S.W.3d 804, 808 (Tex.App.-Dallas 2008, no pet.). A petitioner seeking managing conservatorship has the burden to prove standing. *See In re Smith*, 262 S.W.3d at 465; *Alternatives in Motion*, 210 S.W.3d at 799. The Texas

---

1. Exceptions are found in section 102.0035 (statement to confer standing to a prospective adoptive parent) and section 102.004(a) (consent to suit by relative of the child related within the third degree of consanguinity). *See* TEX. FAM.CODE ANN. §§ 102.0035, 102.004(a) (Vernon 2008).

Legislature has provided a comprehensive statutory framework for standing in the context of suits involving the parent-child relationship. *See* TEX. FAM.CODE ANN. §§ 102.003, 102.0035, 102.004, 102.0045, 102.006 (Vernon 2008); *In re Smith*, 262 S.W.3d at 465.

The petitioner in this case alleged standing based on his assertion that "the child has resided with him continuously for over a six month period of time." The Family Code provides standing to a person with whom the child and a parent have resided for at least six months if the "parent is deceased at the time of the filing of the petition." *See* TEX. FAM.CODE ANN. § 102.003(a)(11) (Vernon 2008). The provision is sometimes referred to as "step-parent standing." Here, the parents are not deceased, so the subsection providing standing to someone who pleads that he has "resided" for at least six months with the parent and child is inapplicable.

Section 102.003(a)(9) of the Texas Family Code, the provision relied on by the petitioner, provides that "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" may file an original suit requesting managing conservatorship. TEX. FAM.CODE ANN. § 102.003(a)(9) (Vernon 2008). Petitioner did not plead that he had "actual care, control, and possession of the child." TEX. FAM.CODE ANN. § 102.003(a)(9) (Vernon 2008). Nevertheless, if this is simply a pleading deficiency that can be corrected by amendment, he should be given that opportunity. We therefore turn to the substance of his standing argument under section 102.003(a)(9).

## THE HEARING

The trial court held an evidentiary hearing on relator's challenge to petitioner's standing to file the suit. Testifying on petitioner's behalf were the petitioner, his father and mother, and his sister-in-law. Petitioner, relator, and the child lived together from 2001 until 2008. Petitioner's father testified petitioner attended school functions involving L.G.C. and was normally responsible for picking up L.G.C. at daycare. Petitioner's mother testified L.G.C. typically spent Christmases at their family home until petitioner and relator ended their relationship. Petitioner's mother also indicated she had observed petitioner give L.G.C. a bath, saw petitioner at school functions for L.G.C., observed petitioner discipline L.G.C., and heard relator ask petitioner to discipline the child. Petitioner's mother also testified he provided financial support for L.G.C. and bought school clothes for him. Petitioner's sister-in-law testified that whenever she saw petitioner, L.G.C., and relator together, petitioner normally disciplined the child. Both relator and petitioner waited on the child—giving him food or other items. L.G.C. called relator "Mom" and petitioner "Daddy." The sister-in-law testified both parties provided financial support for L.G.C. in the last seven years and petitioner provided more discipline for L.G.C. than did relator. Both provided comfort to the child when he was hurt, and petitioner provided guidance and support to the child. Petitioner's sister-in-law indicated that he gave L.G.C. any needed medicine. When L.G.C. was in the hospital, both relator and petitioner were there. The sister-in-law also indicated she had done some of these same things for L.G.C. herself, including providing guidance and support, keeping the child, and giving him medicine as needed.

Petitioner is not the biological or adoptive father of L.G.C. and is not otherwise related to L.G.C. Petitioner was never

married to relator, the child's mother. He maintained a separate mailing address while living with relator. The record establishes that he did not possess any documents that allowed or authorized him to make any decisions relating to school, medical treatment, establishment of residence, or any other legal matters regarding the child. He is not the child's guardian. Although petitioner testified he wanted to adopt L.G.C. and had an attorney draw up papers for that purpose, relator refused to sign any adoption papers or agree to any adoption. There is no evidence relator ever agreed to relinquish legal rights concerning the child. The evidence establishes the contrary. Relator refused to give petitioner legal rights concerning the child.

## ANALYSIS

■ The interest of parents in the "care, custody, and control" of their children "is perhaps the oldest of the fundamental liberty interests" recognized by the United States Supreme Court. (*Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)).[2] Furthermore, this State has long recognized that the "natural right which exists between parents and their children is one of constitutional dimensions." *See Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976); *see also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re Pensom*, 126 S.W.3d 251, 254 (Tex.App.-San Antonio 2003, orig. proceeding). *Troxel* involved grandparents seeking expanded visitation rights. The instant case concerns standing in an original suit affecting the parent-child relationship

filed by a non-parent seeking custodial and visitation rights. As the United States Supreme Court explained in *Troxel*, "[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68–69, 120 S.Ct. 2054 (citing *Reno v. Flores*, 507 U.S. 292, 304, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)).

Texas statutes are intended by the Legislature to be in compliance with the Constitutions of this State and the United States. *See* TEX. GOV'T CODE ANN. § 311.021(1)(Vernon 2005).[3] A court construes a statute to give effect to the Legislature's intent as expressed in the actual language used in the statute. *See Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex.2000); *see generally In re Pensom*, 126 S.W.3d at 255–56.

■ Section 102.003(a)(9), the provision petitioner relies on in his appellate brief, requires that the petitioner have "actual care, control, and possession of the child." In construing a statute, we must presume each word was used for a purpose, and give the word effect if reasonable and possible. *See Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex.2000). In this statute, "control" must mean something more than the control implicit in having care and possession of the child if the word is to be given effect and treated as more than surplusage. The word must be understood in

---

**2.** Standing was among the factors considered by the Supreme Court in *Troxel*. *See Troxel*, 530 U.S. at 67, 72, 120 S.Ct. 2054; *see In re Derzapf*, 219 S.W.3d at 331 n. 7.

**3.** The dissent makes the assertion that he does not believe the statute is unconstitutional. To

be clear, we do not make that holding. Our disagreement with the dissent appears to be over the construction of the statute, and concerns the adequacy of the pleading and evidence.

the context of the rights, duties, and responsibilities of a parent. *See generally Coons–Andersen v. Andersen,* 104 S.W.3d 630, 634–36 (Tex.App.-Dallas 2003, no pet.) ("a person who assumes the duties of a parent"). "Control" refers to the power or authority to guide and manage, and includes the authority to make decisions of legal significance for the child. *See generally In re Kelso,* 266 S.W.3d 586, 589–92 (Tex.App.-Fort Worth 2008, orig. proceeding) (Evidence did not show parent relinquished permanent care, control, and possession of child to grandparents.). *See generally In re Narvaiz,* 193 S.W.3d 695, 700 (Tex.App.-Beaumont 2006, orig. proceeding) (considering the terms "care, control and possession" in another provision of the Family Code). The statute does not require that the person asserting standing demonstrate he had exclusive control of the child. Until he obtained the temporary orders at issue here, however, petitioner had no legal right of control over the child and no authority to make decisions on behalf of the child.

■ After petitioner's standing was challenged in the trial court, he did not amend his petition to allege in his pleadings that he had actual care, control, and possession of the child, though he argued the statute should be construed to grant him standing. Petitioner resided with L.G.C. and relator for more than six months as he alleged, but that fact alone is insufficient to establish standing. As the child's parent, relator had the right to have physical possession of the child and designate the child's residence. *See* TEX. FAM. CODE ANN. § 151.001(a)(1) (Vernon 2008). Relator had the "duty of care, control, protection, and reasonable discipline of the child[.]" *See id.* § 151.001(a)(2) (Vernon 2008). The Texas Family Code recognizes relator had the right to make decisions of legal significance for the child, and to make decisions concerning the child's education. *See id.* § 151.001(a)(7), (10), (11) (Vernon 2008). Relator lived with the child, adequately cared for the child, and did not relinquish to petitioner or abdicate her parental rights, duties, and responsibilities. *See In re M.J.G.,* 248 S.W.3d 753, 757–58 (Tex.App.-Fort Worth 2008, no pet.); *see also In re Kelso,* 266 S.W.3d at 590–91 (the mother controlled where the child would stay and for how long; the grandmother and step-grandfather did not have such control). We reject a construction of the statute that would expand section 102.003(a)(9) beyond the plain meaning of the terms used by the Legislature. *See In re Narvaiz,* 193 S.W.3d at 700.

In *M.J.G.,* the appellate court held that grandparents who alleged "M.J.G. had lived with them since she was born[,] with the exception of one two-week period when she stayed with her parents in another town[,]" nevertheless lacked standing under § 102.003(a)(9). *See In re M.J.G.,* 248 S.W.3d at 757–58. Even though M.J.G. and her brother lived with the grandparents and the grandparents performed day-to-day caretaking duties for the children, the children's parents were also living with the children in the home, and there was no evidence that the parents did not care for the children or that the parents had abdicated their parental duties and responsibilities to the grandparents. *See id.*

We follow the holding in *M.J.G.* as it appears consistent with the meaning of the language used by the Legislature in section 102.003(a)(9), the constitutional liberty interests retained by a fit parent adequately caring for her child, and also with the statutory scheme for standing set forth in the Family Code. Section 102.003(11) provides for standing in the event of the parent's death and is inapplicable here. *See* TEX. FAM.CODE ANN. § 102.003(a)(11) (Vernon 2008) ("a person with whom the child

and the child's ... parent have resided for at least six months...."). Under section 102.004(a), a person within the third degree of consanguinity would have standing if "the child's present circumstances would significantly impair the child's physical health or emotional development; or ... both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit." *See* Tex. Fam.Code Ann. § 102.004(a) (Vernon 2008). Petitioner is not a relative of the child related within the third degree of consanguinity, so he could not proceed under section 102.004(a). Section 102.004(b) provides further that the court may grant "a grandparent or other person" deemed to have had substantial past contact with the child leave to intervene in a pending suit "if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 102.004(b) (Vernon 2008). Petitioner did not intervene in any pending suit, and no evidence in this case indicates the child's health or emotional development is impaired by the child's circumstances or parent. Section 102.004(b) expressly provides that "[a]n original suit requesting possessory conservatorship may not be filed by a grandparent or other person." We doubt the Legislature would have intended section 102.003(a)(9) to permit an "end run" around specific restrictions in the Code. *See In re Derzapf,* 219 S.W.3d at 332. It does not appear the Legislature intended to convey standing under the circumstances presented here.

▬▬ Petitioner also refers the Court to the "in loco parentis" doctrine. The phrase means "in the place of a parent," and "refers to a relationship a person assumes toward a child not his or her own." *Coons–Andersen,* 104 S.W.3d at 634–35. The relationship generally occurs only when a parent is unwilling or unable to care for the child. *See id.* at 635. As stated in *Coons–Andersen,* "Texas courts have never applied the common law doctrine of in loco parentis to grant custodial or visitation rights to a non-parent, against the parent's wishes, when the parent maintains actual custody of the child." *Id.* at 635. The doctrine is inapplicable here. *See id.* at 636 (Section 102.003(a)(9) "is in complete harmony" with, and "actually embraces," the doctrine of in loco parentis.).

## Conclusion

Petitioner did not plead or prove standing under section 102.003(a)(9) to file this action. *See In re M.J.G.,* 248 S.W.3d at 757–58. By incorrectly applying the law on standing, the trial court abused its discretion. Relator has no adequate remedy by appeal. The petition for writ of mandamus is conditionally granted. The trial court shall vacate its orders signed on July 1, 2008, and July 14, 2008. We are confident the trial court will comply with this opinion. A writ will issue only if the trial court fails to comply.

WRIT CONDITIONALLY GRANTED.

STEVE McKEITHEN, Chief Justice, dissenting.

There is no dispute concerning the facts of this case. A man not biologically related to the child lived with and raised the child with the child's mother, from infancy to the child's grade-school years. The record shows the man nurtured, disciplined and financially supported the child. The man lived with the child and the child's mother as a continuous and permanent family unit for a period of time far exceeding six months. He filed a suit affecting the parent-child relationship (SAPCR) within ninety days of separating from the

child's mother. The trial court found a sufficient factual basis to support the man's claim that he had "actual care, control, and possession" of the child for at least six months ending not more than ninety days preceding the date of the filing of the petition. *See* TEX. FAM.CODE ANN. § 102.003(a)(9) (Vernon 2008). The record supports that finding, yet the majority holds that this man has no standing to file a SAPCR pursuant to Section 102.003(a)(9) of the Texas Family Code because there has been no showing that the mother of the child "relinquished" the actual care, control, and possession of the child, or in some other way "abdicated" her parental responsibilities.

Family units ideally have two partners who share child-rearing responsibilities. Nothing in the plain language of Section 102.003(a)(9) excludes a person who shares the role of a parent with the biological parent from having standing as a person with "actual care, control, and possession" of the child. *See id.* Nothing in the plain language of the statute necessitates the "relinquishment" or "abdication" by the biological parent of her parental rights, duties or responsibilities. There is no exclusivity requirement in the statute's plain language. *See id.* There is, however, a rational basis for conferring standing on a person who shares actual care, control, and possession of a child with that child's parent for a period in excess of six months. I do not believe a statute that merely confers standing on such a person is an unconstitutional infringement on the liberty interest of the parent who voluntarily shared care, control, and possession of the child for a period exceeding six months. Because I cannot agree with the majority's interpretation of this statute, I respectfully dissent.