**In re Stephanie WELLS.**

No. 09–12–00158–CV.

Court of Appeals of Texas, Beaumont.

Submitted April 23, 2012.

Decided June 14, 2012.

Carrie L. James, Grady W. James, Jr., Law Offices of Grady W. James, Jr., P.C., Conroe, for relator.

Rachel J. Williams, Williams & Burns, P.L.L.C., Conroe, for real party in interest.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

Stephanie Wells filed a petition for writ of mandamus challenging the trial court's decision giving Dana Ruppert rights as a possessory conservator to M.J., Wells's son. Wells also challenges the trial court's decision allowing Ruppert to have standing to sue Wells in a suit that has affected Wells's relationship with her son. *See* Tex. Fam.Code Ann. §§ 102.003–.004 (West 2008 & Supp.2011). Ruppert filed no response. We conditionally grant the writ.

In four prior cases, this court has addressed standing where a person who is caring for a child, but who is not biologically related to the child, seeks a court's assistance to force the child's parent to allow the non-parent to continue to share the responsibilities of caring for the child. *See In re Calkins,* No. 09–11–00531–CV, 2011 WL 4975008, 2011 Tex.App. LEXIS 8284 (Tex.App.-Beaumont Oct. 20, 2011, orig. proceeding) (mem.op.); *In re C.T.H.S.,* 311 S.W.3d 204 (Tex.App.-Beaumont 2010, pet. denied); *In re K.K.C.,* 292 S.W.3d 788 (Tex.App.-Beaumont 2009, orig. proceeding); *In re Smith,* 262 S.W.3d 463 (Tex.App.-Beaumont 2008, orig. proceeding). In each of those cases, we determined that the non-parent had not established that he or she had standing to bring a suit against the biological parent that would affect the biological parent's choice regarding who had possession of the

child. *See In re Calkins,* 2011 WL 4975008, at *3, 2011 Tex.App. LEXIS 8284 at **7–8; *In re C.T.H.S.,* 311 S.W.3d at 209; *In re K.K.C.,* 292 S.W.3d at 794; *In re Smith,* 262 S.W.3d at 468–69.

Wells's writ of mandamus challenges the trial court's authority requiring her to share possession of her child with a non-parent and asserts that there was no evidence that she is not a fit parent. A writ of mandamus can be used to raise a complaint that another party lacked standing in cases where a court has ordered a fit parent to divide possessory rights with a non-parent. *See In re Herring,* 221 S.W.3d 729, 730 (Tex.App.-San Antonio 2007, orig. proceeding) ("Because temporary orders in suits affecting the parent-child relationship are not appealable, a petition for a writ of mandamus is an appropriate means to challenge them."); *see also generally In re Derzapf,* 219 S.W.3d 327, 334–35 (Tex.2007) (holding mandamus relief appropriate to set aside temporary orders that divest a fit parent's possession of children in violation of law).

It is undisputed that Wells is M.J.'s biological mother. Wells and Ruppert began living together before M.J. was born, and continued to live together until April 2010, when they ended their relationship and Ruppert moved out of Wells's home. While separated, Wells and Ruppert, to the exclusion of the other, divided the responsibilities of caring for M.J. by equally dividing their possession of him. To memorialize their arrangement, in May 2010, Wells and Ruppert agreed in writing that each would have M.J. during certain periods of each week. Wells and Ruppert followed their written agreement until mid-June 2010, when Wells stopped allowing M.J. to go to Ruppert's home. In November 2010, Wells once again began

allowing Ruppert to share in the responsibilities of caring for M.J. Between November 2010 and mid-August, 2011, Wells allowed M.J. to live with Ruppert approximately fifty percent of the time. In mid-August 2011, Wells again refused to allow M.J. to live with or visit Ruppert.

On November 3, 2011, Ruppert filed suit and requested that she be appointed M.J.'s sole managing conservator. Ruppert alleged that Wells had "a history or pattern of mental and/or emotional abuse directed against" M.J., and that Wells should be denied access to him. Wells filed a plea to the jurisdiction, contending that the trial court had no jurisdiction over Ruppert's lawsuit because Ruppert lacked standing. After conducting an evidentiary hearing, the trial court denied Wells's jurisdictional challenge, signed temporary orders appointing Wells as temporary sole managing conservator, and named Ruppert as M.J.'s temporary possessory conservator. The order permits Ruppert weekend possession of M.J., and to have M.J. for spring break during M.J.'s 2012 school year.

The testimony from the hearing reflects that Ruppert maintained a close relationship with M.J. and that she filled a role in co-parenting him during the periods that Wells allowed her to do so. Nevertheless, Wells never ceded to Ruppert any of her exclusive legal rights to control M.J. For example, the record does not show that Ruppert had the right to maintain health insurance on M.J.; instead, the record shows that Wells maintained and exercised that right. Additionally, Wells never gave Ruppert any rights to enroll M.J. in school, as the record shows that Wells made all the relevant decisions related to M.J.'s education. Also, there was no evidence introduced at the hearing supporting Ruppert's claim that Wells had mentally or emotionally abused M.J.

Ruppert contends that there is evidence that she had a legal right to control M.J.'s medical care. The record shows that shortly after M.J.'s birth, Wells had signed a consent form designating Ruppert as a person able to provide consent to obtain medical treatment on M.J.'s behalf. However, the testimony does not show that Ruppert ever actually exercised the right to consent to M.J.'s medical treatment. According to Wells, she made all of the medical decisions concerning M.J. during the six-month period prior to the date that Ruppert filed her suit affecting the parent-child relationship (SAPCR), and Wells also made all significant medical decisions regarding M.J. within the past year. Wells also testified that Ruppert had made no legal decisions affecting M.J. in the past six to nine months without her knowledge and consent. Ruppert did not dispute Wells's testimony concerning who actually had made medical decisions concerning M.J. during the statutory period at issue.

The Texas Legislature has provided a comprehensive statutory framework required to establish standing in suits which affect the parent-child relationship. *See* Tex. Fam.Code Ann. §§ 102.003, 102.005 (West Supp.2011), §§ 102.0035, 102.004, 102.0045, 102.006 (West 2008); *see also In re Smith*, 262 S.W.3d at 465. Ruppert's primary argument is that section 102.003(a)(9) of the Family Code provides for her standing and allows her to sue Wells in a SAPCR. Section 102.003(a)(9) provides that "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" may file an original suit requesting managing conservatorship. Tex. Fam. Code Ann. § 102.003(a)(9); *see id.* § 101.032 (West 2008). Nevertheless, we have not interpreted this provision to allow

non-parents, who have enjoyed periods of physical possession of a child, the requisite standing necessary to sue a fit parent for possession of the child when the fit parent no longer wants his or her child to be in the non-parent's custody. *See In re Calkins,* 2011 WL 4975008, at *3, 2011 Tex. App. LEXIS 8284 at **7–8; *In re C.T.H.S.,* 311 S.W.3d at 209; *In re K.K.C.,* 292 S.W.3d at 794; *In re Smith,* 262 S.W.3d at 468–69. For example, in *In re K.K.C.,* we noted that "[t]he interest of parents in the 'care, custody, and control' of their children 'is perhaps the oldest of the fundamental liberty interests' recognized by the United States Supreme Court." 292 S.W.3d at 792 (quoting *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). And, as explained by the United States Supreme Court in *Troxel,* "[s]o long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." 530 U.S. at 68–69, 120 S.Ct. 2054 (citing *Reno v. Flores,* 507 U.S. 292, 304, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). In our view, "[t]he standing statutes should be construed in a manner consistent with the constitutional principles stated in *Troxel.*" *In re C.T.H.S.,* 311 S.W.3d at 208. In other words, we view the standing requirements in the Family Code through the prism of *Troxel,* which limits a court's right to interfere with the decisions made by a fit parent on a child's behalf. *See id.*

In this case, after they quit living together, Wells allowed Ruppert to enjoy substantial periods of exclusive periods of time with M.J. There is evidence supporting the trial court's determination that Ruppert exercised actual care and actual possession of the child during the six-month statutory period at issue. Nevertheless, there is no evidence that Ruppert maintained or actually exercised any legal control over M.J., in the period that is relevant to determine standing in SAPCRs. *See* Tex. Fam.Code. Ann. § 102.003(a)(9). "Control," as we explained in *In re K.K.C.,* must mean more than "the control implicit in having care and possession of the child[.]" 292 S.W.3d at 792; *contra Jasek v. Tex. Dep't of Family & Protective Servs.,* 348 S.W.3d 523, 532–37 (Tex.App.-Austin 2011, no pet.) (criticizing *In re K.K.C.'s* analysis of the Legislature's use of the term "control" in section 102.003(a)(9) of the Texas Family Code and declaring that the term, as used in section 102.003(a)(9), is no different than care and possession). Rather, when considering the term "control" in the context of the rights, duties, and responsibilities of a parent, we have determined that it refers to "the power or authority to guide and manage, and includes the authority to make decisions of legal significance for the child." *In re K.K.C.,* 292 S.W.3d at 792–93.

Here, like the child's parent in *In re K.K.C.,* Wells exercised control over the physical possession of M.J., including where he lived, during the statutory period at issue. *See id.* at 793; *see also* Tex. Fam.Code Ann. § 151.001(a)(1) (West 2008). While Wells allowed M.J. to live with Ruppert at times, Wells was under no enforceable obligation to allow him to stay with Ruppert. Wells also made all decisions of legal significance for the child, such as her decision concerning M.J.'s education. *See In re K.K.C.,* 292 S.W.3d at 793; *see also* Tex. Fam.Code Ann. § 151.001(a)(7), (10), (11) (West 2008). We are also not persuaded that the medical consent that Wells gave Ruppert is a delegation of sufficient legal authority because such consents, by statute, are only effec-

tive "when the person having the right to consent ... cannot be contacted[.]" Tex. Fam.Code Ann. § 32.001(a) (West Supp. 2011). Therefore, the medical consent which Wells executed only allowed Ruppert to make medical decisions for M.J. if Wells was unable to be reached, and no testimony at the hearing established that such a situation ever occurred.

In summary, we conclude that the record shows that Wells controlled where M.J. would stay and for how long; therefore, the trial court's finding that Wells abdicated her right of control over M.J. is not supported by the record. See In re K.K.C., 292 S.W.3d at 793; In re Kelso, 266 S.W.3d 586, 590–91 (Tex.App.-Fort Worth 2008, no pet.). Furthermore, there was no evidence presented at the hearing showing that Ruppert exercised any legal control over M.J.'s affairs during the relevant time period under section 102.003(a)(9). See Tex. Fam.Code Ann. § 102.003(a)(9). We note that while the trial court made extensive findings regarding Wells, it did not find that she was an unfit parent, that she would significantly impair M.J.'s physical health or emotional development, or that she should not be designated as M.J.'s managing conservator. Additionally, the record contains no evidence that Wells had not adequately cared for M.J., nor is there any evidence to support Ruppert's claim that Wells was unfit. While the desirability of compelling Wells to allow Ruppert a right to visitation might be debatable, when viewed from the child's point of view, Troxel does not allow a court to second-guess a fit parent's decision. See Troxel, 530 U.S. at 68–69, 120 S.Ct. 2054. We once again observe that "[s]tanding does not turn on whether a trial court agrees or disagrees with a parent's decision concerning the best interest of her children[.]" In re C.T.H.S., 311 S.W.3d at 209.

In the absence of a finding that a child's parent is unfit, and in absence of any evidence showing that Ruppert actually exercised legal control over M.J. during the period at issue, we hold the trial court abused its discretion in substituting its judgment regarding possessory rights for that of M.J.'s parent. See In re C.T.H.S., 311 S.W.3d at 209; In re K.K.C., 292 S.W.3d at 793–94; In re Smith, 262 S.W.3d at 468–69; see also Troxel, 530 U.S. at 68–69, 120 S.Ct. 2054. We further conclude that Ruppert failed to demonstrate that she had standing to file a SAPCR against Wells under any of the provisions providing for standing for a SAPCR. See Tex. Fam.Code Ann. §§ 102.003–.006.

Because Wells has no adequate remedy by appeal, Wells's petition for writ of mandamus is conditionally granted. We order the trial court to vacate its order dated February 7, 2012, and to enter an order dismissing Ruppert's SAPCR for lack of standing. See Tex. Dep't of Transp. v. Ramirez, 74 S.W.3d 864, 867–68 (Tex.2002) (directing that the suit must be dismissed if the facts and evidence demonstrate that it is impossible for a plaintiff to amend its pleadings to invoke the trial court's jurisdiction). We are confident the trial court will comply with this opinion. A writ will issue only if the trial court fails to comply.

WRIT CONDITIONALLY GRANTED.

STEVE McKEITHEN, Chief Justice, concurring.

I concur with the majority's decision to conditionally grant the petition for writ of mandamus. As I explained in my dissenting opinion in In re K.K.C., 292 S.W.3d 788 (Tex.App.-Beaumont 2009, orig. proceeding), "[n]othing in the plain language of Section 102.003(a)(9) excludes a person who shares the role of a parent with the biological parent from having standing as a

person with 'actual care, control, and possession' of the child[,]" and "[n]othing in the plain language of the statute necessitates the 'relinquishment' or 'abdication' by the biological parent of her parental rights, duties or responsibilities." *Id.* at 795 (McKeithen, C.J., dissenting); *see* Tex. Fam.Code Ann. § 102.003(a)(9) (West Supp.2011). A rational basis exists for conferring standing on a person who shares actual care, control, and possession of a child with that child's parent for a period in excess of six months. *In re K.K.C.,* 292 S.W.3d at 795 (McKeithen, C.J., dissenting). However, because *In re K.K.C.* is binding precedent of this Court, I reluctantly concur in the result reached by the majority in this case.