# NO. 12-15-00149-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE: CHARLES DWAYNE* | § | |
| *LANKFORD AND ROBERTA* | § | *ORIGINAL PROCEEDING* |
| *GRESHAM, RELATORS* | § | |

### *OPINION*

Charles Dwayne Lankford and Roberta Gresham seek mandamus relief from the trial court's May 12, 2015 orders overruling their pleas to the jurisdiction and Lankford's motion to dismiss, and designating Stephanie Smith as a joint managing conservator of T.D.L.[1] We deny the petition.

### BACKGROUND

T.D.L. is the fourteen year old biological child of Charles Dwayne Lankford and Karla Frith, who were divorced in 2003. T.D.L. started living with Lankford when she was three months old after Lankford and her biological mother separated. From 2003 until sometime in 2007, Lankford worked "outside of the States." During that time, Roberta Gresham, who is Lankford's mother and T.D.L.'s grandmother, lived in Lankford's house with T.D.L.

Lankford and Stephanie Smith married in 2008, but had been together since sometime in 2007. T.D.L. was approximately five years old when the relationship began. From 2007 to 2012, Lankford worked out of town, and was away from home between fifty and eighty percent of the time. Smith and T.D.L. remained in the family home. In July 2012, Lankford began working in Afghanistan.[2] According to Lankford, this was "a decision by [him] that [he and Smith] discussed

---

[1] The respondent is the Honorable Joe Lee Register, Judge of the County Court at Law No. 1, Angelina County, Texas.

[2] According to the record, Lankford still works in Afghanistan.

and agreed upon." Lankford elected expatriate status, which prohibits him from being in the United States more than thirty-five days a year. Smith and T.D.L. again remained in the family home.

In November 2014, Smith filed for divorce at Lankford's request. Her petition included a motion to modify the existing conservatorship order to appoint Smith and Lankford as joint managing conservators of T.D.L. Smith also requested that she be designated as the conservator having the exclusive right to designate T.D.L.'s primary residence. She alleged that she has standing under Texas Family Code Section 102.003(a)(9) to seek modification of the order.

Through various errors and misunderstandings that occurred in prior proceedings, the existing conservatorship order, which was rendered in 2004, made Gresham managing conservator and Lankford and Frith possessory conservators. However, Lankford believed the three were joint managing conservators. He also believed that he had the right to designate T.D.L.'s residence.

In December 2014, Lankford and Gresham filed a motion to modify the 2004 order to make them joint managing conservators.[3] Additionally, they asserted that Smith's motion to modify must be filed in the pre-existing suit affecting the parent-child relationship (SAPCR). Smith moved to sever the conservatorship issue and consolidate it with the SAPCR. The trial court granted the motion. Lankford filed a plea to the jurisdiction and motion to dismiss alleging Smith lacked standing. Gresham raised the issue in her answer. After a hearing, the trial court concluded that Smith has standing under section 102.003(a)(9) and, by written order, overruled the pleas to the jurisdiction and the motion to dismiss. The trial court also rendered temporary orders designating Smith as a joint managing conservator of T.D.L. This original proceeding followed.

## PREREQUISITES TO MANDAMUS

Mandamus is an extraordinary remedy that is available only when the trial court has clearly abused its discretion and there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36, 137 (Tex. 2004) (orig. proceeding). A clear abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

---

[3] Lankford and Gresham discovered the error in 2009, and Lankford sought modification at that time. However, that proceeding was ultimately dismissed for want of prosecution after the temporary orders expired.

2

A trial court has no discretion in determining what the law is or applying the law to the facts. *Id*. Therefore, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Id*. at 840.

The improper denial of a plea to the jurisdiction is generally not reviewable by mandamus because it involves a question of law that can be addressed by ordinary appeal. *See* ***In re State Bar of Tex.***, 113 S.W.3d 730, 734 (Tex. 2003) (orig. proceeding). However, mandamus review is appropriate when there is a jurisdictional dispute in a proceeding involving conservatorship issues. *See* ***Geary v. Peavy***, 878 S.W.2d 602, 603 (Tex. 1994) (orig. proceeding); ***In re Green***, 352 S.W.3d 772, 774 (Tex. App.—San Antonio 2011, orig. proceeding). This is due to the unique and compelling circumstances presented when the trial court decides issues of conservatorship. *See* ***Geary***, 878 S.W.2d at 603. Because temporary orders are not appealable, mandamus is an appropriate remedy when a trial court abuses its discretion in issuing temporary orders in a SAPCR. *See* ***In re Derzapf***, 219 S.W.3d 327, 335 (Tex. 2007) (orig. proceeding).

<u>**STANDING**</u>

A party seeking conservatorship of a child must have standing to do so. ***In re McDaniel***, 408 S.W.3d 389, 396 (Tex. App.–Houston [1st Dist.] 2015, orig. proceeding). Because standing is implicit in the concept of subject matter jurisdiction, it is a threshold issue in a conservatorship proceeding. ***In re N.L.D.***, 344 S.W.3d 33, 37 (Tex. App.–Texarkana 2011, no pet.). A party's lack of standing deprives the court of subject matter jurisdiction and renders subsequent trial court action void. ***In re Smith***, 260 S.W.3d 568, 572 (Tex. App.–Houston [14th Dist.] 2008, orig. proceeding).

Whether a trial court has subject matter jurisdiction is a question of law, which we review de novo. ***In re K.D.H.***, 426 S.W.3d 879, 882 (Tex. App.–Houston [14th Dist.] 2014, no pet.). In our review, we must take as true all evidence favorable to the challenged party, indulge every reasonable inference, and resolve any doubts in the challenged party's favor. ***McDaniel***, 408 S.W.3d at 397.

The Texas Legislature has provided a comprehensive framework for standing in the context of suits involving the parent-child relationship. *See* TEX. FAM. CODE ANN. §§ 102.003–.007 (West 2014 & Supp. 2016). When standing has been statutorily conferred, the statute itself serves as the

3

proper framework for the standing analysis. *In re H.G.*, 267 S.W.3d 120, 123 (Tex. App.–San Antonio 2008, pet. denied). Thus, the party seeking relief must allege and establish standing within the parameters of the language used in the relevant statute. *Id*. at 124.

We review the trial court's interpretation of the applicable statutes de novo. *In re Russell*, 321 S.W.3d 846, 856 (Tex. App.–Fort Worth 2010, orig. proceeding [mand. denied]). We must give effect to the legislature's intent from the language used in the statute and not look to extraneous matters for an intent the statute does not state. *In re Shifflet*, 462 S.W.3d 528, 536 (Tex. App.–Houston [1st Dist.] 2015, orig. proceeding). We presume that the legislature chooses a statute's language with care, and includes each word chosen for a purpose while purposefully omitting words not chosen. *In re M.N.*, 262 S.W.3d 799, 803 (Tex. 2008). We use definitions prescribed by the legislature and any technical or particular meaning the words have acquired. TEX. GOV'T CODE ANN. § 311.011(b) (West 2013). Otherwise, we construe the statute's words according to their plain and common meaning. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008). If the meaning of the statutory language is unambiguous, the interpretation supported by the plain meaning must be adopted. *Shifflet*, 462 S.W.3d at 536.

## TEXAS FAMILY CODE SECTION 102.003(a)(9)

A person who, at the time of filing, has standing to sue under Chapter 102 of the family code may seek modification of an existing conservatorship order. TEX. FAM. CODE ANN. § 156.002(b) (West 2014). A person has standing to sue under Chapter 102 if, as alleged here, she is not a foster parent and "has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." *Id*. § 102.003(a)(9) (West Supp. 2016). A determination of standing under subsection (a)(9) is necessarily fact-specific and must be made on a case-by-case basis. *Shifflet*, 462 S.W.3d at 538; *In re M.P.B.*, 257 S.W.3d at 809. The purpose of subsection (a)(9) is to create standing for those who have developed and maintained a relationship with a child over time. *In re E.G.L.*, 378 S.W.3d 542, 547 (Tex. App.–Dallas 2012, pet. denied); *In re Y.B.*, 300 S.W.3d 1, 4 (Tex. App.–San Antonio 2009, pet. denied); *see also T.W.E. v. K.M.E.*, 828 S.W.2d 806, 808 (Tex. App.–San Antonio 1992, no writ) (explaining that purpose of former version of section 102.003(a)(9) was to

"create standing for those who have developed and maintained a relationship with the child over time").

ACTUAL CONTROL–THE SPLIT OF AUTHORITY

## ACTUAL CONTROL–THE SPLIT OF AUTHORITY

Lankford and Gresham do not dispute that Smith had care and possession of T.D.L. for the required time period. Nor do they argue that Smith lacks standing under the trial court's construction of the statute. Instead, they assert that the trial court applied an incorrect definition of "control" as that term is used section 102.003(a)(9). As a result, they maintain, the trial court abused its discretion when it ruled that Smith has standing under subsection (a)(9).

"Control" is not defined in the family code, and neither the Texas Supreme Court nor this Court has defined the term in this context. Consequently, Lankford and Gresham have surveyed the cases defining or applying the term as used in section 102.003(a)(9). They inform us that the cases are sometimes said to represent two lines of authority among the courts of appeals, differing principally on what constitutes "control" over the child.

## Legal Control Required

Lankford and Gresham insist that to have standing under subsection (a)(9), Smith must establish that she has had "legal control" over T.D.L. They urge that she has not met this burden. As support for their position, they cite *In re K.K.C.*, 292 S.W.3d 788 (Tex. App.–Beaumont 2008, orig. proceeding).

In *K.K.C.*, a nonparent filed an original SAPCR asserting standing under subsection (a)(9). *K.K.C.*, 292 S.W.3d at 791. The nonparent lived with the child and the child's mother from 2001 until 2008 and produced extensive evidence describing his relationship with the child. *See id*. In addressing the nonparent's standing, the Beaumont court of appeals focused on whether the nonparent had "control" of the child as required by the statute.

The court first noted that the fundamental liberty interest of parents in the "care, custody, and control" of their children has long been recognized by the United States Supreme Court and Texas courts. *See id*. at 792 (citations omitted). The court then stated that, "so long as a parent adequately cares for his or her children (*i.e*., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id*. at 792 (quoting

5

***Troxel v. Granville***, 530 U. S. 57, 68-69, 120 S. Ct. 2054, [2061,] 147 L. Ed. 2d 49 (2000)).[4] The court recognized that the legislature intended for Texas statutes to be in compliance with the United States and Texas Constitutions and that a court construes a statute to give effect to the legislature's intent as expressed in the actual statutory language. *See **id***. Thus, the court reasoned, section 102.003(a)(9) must be applied in a manner that preserves the constitutional liberty interest retained by a fit parent who is adequately caring for his child. *See **id***. at 792-93.

The court opined that, in light of these principles, "'control,' as used in subsection (a)(9), must mean something more than the control implicit in having care and possession of the child if the word is to be given effect and treated as more than surplusage." ***Id***. at 792. Therefore, "[t]he word must be understood in the context of the rights, duties, and responsibilities of a parent." ***Id***. The court then concluded that "control" refers to "the power or authority to guide and manage, and includes the authority to make decisions of legal significance for the child." ***Id***. at 793. Applying this definition, the court, with one judge dissenting, held that the nonparent did not have standing. ***Id***. at 794.

The Fort Worth and San Antonio courts of appeals have followed ***K.K.C.*** *See **In the Interest of H.S.***, No. 02-15-00303-CV, 2016 WL 4040497, at *5 (Tex. App.–Fort Worth July 28, 2016, no pet. h.) (mem. op.) (modification suit); ***In the Interest of N.I.V.S.***, No. 04-14-00108-CV, 2015 WL 1120913, at *5 (Tex. App.–San Antonio Mar. 11, 2015, no pet.) (mem. op.) (original SAPCR).

### Legal Control Not Required

A case decided by the Austin court of appeals represents the contrary line of authority. *See generally **Jasek v. Tex. Dep't of Family & Protective Servs.***, 348 S.W.3d 523 (Tex. App.–Austin 2011, no pet.). In ***Jasek***, the Texas Department of Family and Protective Services (DFPS), as sole managing conservator, placed two children with the Jaseks under a "Placement Authorization." ***Id***. at 527. The authorization imposed certain duties and limitations on the Jaseks and authorized DFPS, "at its sole discretion," to remove the children from the Jaseks "at any time, subject to applicable court orders." ***Id***. Two years later, DFPS removed the children, and the Jaseks requested to be appointed the children's joint managing conservators. ***Id***.

---

[4] In ***Troxel***, a grandparent visitation rights case, the Supreme Court held that a "breathtakingly broad" Washington state visitation statute was unconstitutional as applied. ***Troxel***, 530 U. S. at 66, 73, 120 S. Ct. at 2061, 2064. We address ***Troxel*** in more detail later in this opinion.

As pertinent here, DFPS asserted the Jaseks could not establish standing under section 102.003(a)(9) because they did not have legal control of the children during the placement. *Id*. The trial court agreed with DFPS, but the appellate court did not and reversed and remanded. *Id.* at 527, 538. In its analysis, the court conducted an extensive examination of the plain language of subsection (a)(9), the definitions and usage of the terms "actual" and "control," and existing case law. *Id*. at 532-37.

The court first noted that the adjective "actual" modifies each of the three nouns that follow it: care, control, and possession. *Id*. at 532. Therefore, a person asserting standing under subsection (a)(9) must show that she has had actual care, actual control, and actual possession of the child for the required time period. *Id*. The court then stated that "actual" is a commonly used word that means "existing in fact or reality." *Id*. at 532 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 22 (2002)). This definition, the court observed, is consistent with the use of the word "actual" in legal contexts to indicate something that exists in fact as opposed to "constructive"— "something that exists by virtue of a legal imputation or fiction, but not existing in fact." *Id*. (citing BLACK'S LAW DICTIONARY 40 (9th ed. 2009)). And in accordance with the established principles of statutory construction, the court presumed that "the Legislature was aware of such usage and connotation, and deliberately intended that meaning, when it made 'actual' care, control, and possession the basis for standing under family code section 102.003(a)(9)." *See id*. at 533 (citations omitted). The court also cited three definitions for "control": (1) "[p]ower or authority to manage, direct, govern, administer, or oversee"; (2) "power or authority to guide or manage: directing or restraining domination"; and (3) "power to govern the management and policies of a person." *Id*. (citing *American Fid. & Cas. Co. v. Traders & Gen. Ins. Co.*, 160 Tex. 554, 334 S.W.2d 772, 775 (1960); WEBSTER'S THIRD NEW INT'L DICTIONARY 496 (2002); BLACK'S LAW DICTIONARY 378 (9th ed. 2009)).

Based upon the definitions of "actual" and "control," the court concluded that "actual control," as used in section 102.003(a)(9), means "the actual power or authority to guide or manage or the actual directing or restricting of the child, as opposed to legal or constructive power or authority to guide or manage the child." *Id*. In the court's view, "these words reflect the Legislature's intent to create standing for those who have, over time, developed and maintained a

7

relationship with a child entailing the actual exercise of guidance, governance[,] and direction similar to that typically exercised by parents with their children." *Id*.

The Austin court found only two cases addressing "actual control" separately rather than in combination with "care" and "possession"—*In re Kelso*, 266 S.W.3d 586 (Tex. App.–Fort Worth 2008, orig. proceeding), and *K.K.C.*, which we discussed earlier.[5] *See Jasek*, 348 S.W.3d at 548. After examining each case, the court respectfully disagreed with its sister courts' conclusions that "actual control" exists only when a parent or conservator has relinquished rights over a child (*Kelso*) or when the person asserting standing has the ultimate legal authority to control the child (*K.K.C.*). *See id*. at 534-37. Specifically, the court noted that nothing in section 102.003(a)(9) imposes either requirement. *Id*. at 535. Further, the court concluded that limiting standing under subsection (a)(9) to those having the ultimate legal right to control a child would require reading words into the text "that are not there" and render the word "actual" either superfluous or meaningless. *See id.*

Several other courts of appeals have applied the *Jasek* definition of "actual control." *See In the Interest of K.G.*, No. 05-14-01171-CV, 2016 WL 3265215, at *6 (Tex. App.–Dallas June 13, 2016, no pet.) (mem. op.); *In the Interest of K.S.*, No. 14-15-00008-CV, 2016 WL 1660366, at *4 (Tex. App.–Houston [14th Dist.] Apr. 26, 2016, pet. denied) (op.); *Interest of B.A.G.*, No. 11-11-00354-CV, 2013 WL 364240, at *10 (Tex. App.–Eastland Jan. 13, 2013, no pet.) (mem. op.); *In the Interest of K.K.T.*, No. 07-11-00306-CV, 2012 WL 3553006, at *4 (Tex. App.–Amarillo Aug. 17, 2012, no pet.) (mem. op.).

**LANKFORD AND GRESHAM'S ARGUMENTS**

Lankford and Gresham maintain that the *K.K.C.* "legal control" standard is necessary to protect a parent's liberty interest in the care, custody, and control of his children. They also argue that if the *Jasek* definition of "control" is correct, section 102.003(a)(11)'s requirement that the parent be deceased would be superfluous.

**Protection of parental constitutional rights**

---

[5] Although the Austin court characterizes these cases as addressing "actual control," neither case considered the word "actual" in its discussion. Nor do Lankford and Gresham address it here.

8

Lankford and Gresham point out that, in a proceeding to modify a managing conservatorship order, there is no presumption that appointment of a parent is in the best interest of the child. Thus, they characterize standing as "the one bulwark Texas law affords" to protect a parent's fundamental constitutional right to direct the upbringing of his children. Accordingly, they conclude that in the absence of the parental presumption, the "legal control" requirement must be imposed to protect the parent's rights when modification of a conservatorship order is sought. They maintain further that section 102.003(a)(9) cannot be in compliance with the United States and Texas Constitutions, as intended by the legislature, unless it complies with *Troxel v. Granville*.

**1. The parental presumption.** The presumption that the best interest of the child is served by awarding conservatorship to the child's parent is deeply embedded in Texas law. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). This presumption is based upon the natural affection usually flowing between parent and child. *Id*. (citing *Taylor v. Meek*, 154 Tex. 305, 276 S.W.2d 787, 790 (1955)). The presumption is codified in the chapter of the family code that governs original SAPCRs, but not in the chapter that governs modification suits. *See* TEX. FAM. CODE ANN. §§ 153.131(a) (West 2014), 156.001-.105 (West 2014 & Supp. 2016). The Texas Supreme Court has determined that, because the legislature did not express its intent to apply the presumption in modification suits, courts should not apply the presumption in those cases. *V.L.K.*, 24 S.W.3d at 343.

By requiring application of the parental presumption in original SAPCRs but not in modification suits, the legislature balanced the rights of the parents "in the care, custody and control of their child" and the best interest of the child, which includes the child's interest in stability. *See In re C.A.M.M.*, 243 S.W.3d 211, 216 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (citation omitted). When those two interests compete and the legislature has authorized modification in the circumstances presented, the child's interest in stability prevails over the parent's right to primary possession. *See id*. Lankford and Gresham argue, in substance, that because this balance favors the child, *Troxel* mandates a narrow construction of section 102.003(a)(9), i.e., the "legal control" requirement, to protect the parent.

**2. Troxel v. Granville.** The dispute in *Troxel* arose between a mother and her children's paternal grandparents after the mother sought to limit the grandparents' visitation with the children. The grandparents petitioned for visitation rights under a Washington state statute allowing "[a]ny

9

person" to petition the court for visitation rights "at any time." ***Troxel v. Granville***, 530 U.S. 59, 61, 120 S. Ct. 2054, 2057, 147 L. Ed. 2d 49 (2000). A court could grant the requested visitation rights "whenever visitation may serve the best interest of the child whether or not there has been any change of circumstances." ***Id***., 530 U. S. at 61, 120 S. Ct at 2057-58. Ultimately, a plurality of the Court held that, as applied, the statute violated the Due Process Clause because it infringed on a parent's right to make decisions concerning the care, custody, and control of the parent's children. ***Id***., 530 U. S. at 66-67, 120 S. Ct. at 2061.

The Court described the Washington statute as "breathtakingly broad." ***Id***., 530 U. S. at 67, 120 S. Ct. at 2061. Moreover, the Court expressed concern that the language "effectively permit[ted] any third party seeking visitation to subject any decision by a parent about visitation of the parent's children to state-court review." ***Id***. As one of a combination of factors that compelled its conclusion, the Court noted that the grandparents did not allege, and no court had found, that the children's mother was an unfit parent. ***Id***., 530 U. S. at 68, 120 S. Ct. at 2062. This was important, the Court explained, because "there is a presumption that fit parents act in the best interests of their children." ***Id***.

The Court then made the statement quoted in ***K.K.C.***: "[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." ***Id***., 530 U. S. at 68, 120 S. Ct. at 2016; *see* ***K.K.C.***, 292 S.W.3d at 792. According to Lankford and Gresham, this statement supports their conclusion that section 102.003(a)(9) cannot pass constitutional muster if the ***Jasek*** definition of "control" is correct.

We note, however, that the order under review in ***Troxel*** was an original determination of grandparent visitation rights. Thus, the Court did not address modification of conservatorship orders. Additionally, the parental presumption applied in ***Troxel***. But when modification of conservatorship is sought, Texas courts do not apply the parental presumption, and no finding of parental unfitness is required. *See* TEX. FAM. CODE ANN. § 156.101(a) (West 2014); ***V.L.K.***, 24 S.W.3d at 343. The statement in ***Troxel*** explains the effect of the parental presumption absent a finding that a parent is unfit. It does not call into question the legislature's decision not to apply the parental presumption in suits to modify conservatorship orders. And the Court did not issue

any directives or formulate any general guidelines for conferring standing when the parental presumption does not apply.[6] Therefore, *Troxel* does not inform our analysis.

**"Stepparent Standing"**

A person has standing under family code section 102.003(a)(11) to request modification of a conservatorship order if the child and her parent resided with the person for at least six months ending not more than ninety days preceding the date the petition is filed and the parent is deceased when the petition is filed. TEX. FAM. CODE ANN. §§ 102.003(a)(11) (West Supp. 2016), 156.002(b) (West 2014). Lankford and Gresham point out that under subsection (a)(11), a stepparent can obtain standing only if the child's parent is deceased. They argue that if Smith's interpretation of section 102.003(a)(9) (the *Jasek* definition of "actual control") is correct, stepparents will always rely on (a)(9) instead of (a)(11) to establish standing when a child's parent dies. Lankford and Gresham conclude their argument with the following statement from *K.K.C.*: "We doubt the Legislature would have intended section 102.003(a)(9) to permit an 'end run' around specific restrictions in the Code." *See K.K.C.*, 292 S.W.3d at 794.

Subsection (a)(11) was designed as a "stepparent" statute, affording standing to a stepparent who has helped raise a child and the stepparent's spouse (the child's parent) dies. *Doncer v. Dickerson*, 81 S.W.3d 349, 358 (Tex. App.–El Paso 2002, no pet.). As enacted, however, subsection (a)(11) is not limited to stepparents and, instead, confers standing on "a person" with whom the child and the parent resided for the requisite time prior to the parent's death. *See* TEX. FAM. CODE ANN. § 102.003(a)(11). *See id*. Nothing in (a)(11) makes this the exclusive subsection under which standing can be obtained after the death of a child's parent. *See id*.

Subsection (a)(9) affords standing for those who have developed and maintained a relationship with a child over time. *E.G.L.*, 378 S.W.3d at 547; *In re Y.B.*, 300 S.W.3d at 4. This relationship comprises "actual care, control, and possession of the child." *See* TEX. FAM. CODE ANN. § 102.003(a)(9). Stepparents are not excluded from this subsection, and the fact that the child's parent is deceased does not disqualify "a person" from seeking standing under this subsection. *See id*.

---

[6] One court has observed that "the tenor of the *Troxel* opinion suggests a reluctance to place strict mandates on state legislatures; the Court balked only at what it called the 'sweeping breadth' of the Washington nonparental visitation statute and the 'application of that broad, unlimited power in this case' but did not dictate any bright-line rules for statutes affecting parental rights." *In re S.A.H.*, 420 S.W.3d 911, 920 (Tex. App.–Houston [14th Dist.] 2014, no pet.).

Based upon the plain language of subsections (a)(9) and (a)(11), a stepparent or any other person can assert standing to seek modification of a conservatorship order under (a)(9), (a)(11), or both when a parent is deceased. In other words, (a)(9) and (a)(11) are not mutually exclusive. *See Jasek*, 348 S.W.3d at 535.

A person seeking standing when a child's parent has died must show only that the child and the child's parent resided with the person for the required time period. *See* TEX. FAM. CODE ANN. § 102.003(a)(11). Lankford and Gresham implicitly argue that the residence requirement of (a)(11) is more restrictive than *Jasek*'s "actual control" requirement, but do not explain how. Further, they do not provide any substantive analysis to support their conclusion that application of the *Jasek* definition of "actual control" in (a)(9) will render subsection (a)(11)'s death requirement superfluous. Therefore, we do not address this argument. *See* TEX. R. APP. P. 52.3(h); *In re Fitzgerald*, 429 S.W.3d 886, 897 (Tex. App.–Tyler 2014, orig. proceeding) (holding issue waived for inadequate briefing and stating that Rule 52.3(h) "requires that the relator provide substantive legal analysis as well as citations to authority supporting his legal arguments and conclusions").

## Summation

*Troxel* does not cast doubt on the constitutionality of section 102.003(a)(9) if the *Jasek* definition of "actual control" is applied. And we do not address Lankford and Gresham's argument relating to the effect on subsection (a)(11) if the *Jasek* definition of "actual control" applies. Further, we conclude that, had the legislature intended "control" to mean "legal control" instead of "control" in its ordinary sense, it could easily have defined it as such. Or it could have defined "actual control" to mean "legal control." But it did neither. Therefore, we agree with the reasoning in *Jasek* and hold that its definition of "actual control" reflects the legislature's intent when it enacted the "control" requirement of section 102.003(a)(9). Accordingly, we also hold that the trial court did not abuse its discretion in applying the *Jasek* definition of "actual control" to determine whether Smith had standing under subsection (a)(9). And Lankford and Gresham do not alternatively contend that, if the *Jasek* definition is correct, the trial court misapplied it to the facts at hand.

## CONCLUSION

Lankford and Gresham have not established that the trial court incorrectly determined the law or misapplied the law to the facts. Therefore, they have not shown that the trial court abused its discretion by denying the pleas to the jurisdiction and motion to dismiss or in rendering temporary orders appointing Smith as a joint managing conservator of T.D.L. Accordingly, we *deny* Lankford and Gresham's petition for writ of mandamus.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered August 24, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 24, 2016**

**NO. 12-15-00149-CV**

**CHARLES DWAYNE LANKFORD AND ROBERTA GRESHAM,**
Relators
V.

**HON. JOE LEE REGISTER,**
Respondent

### ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by **CHARLES DWAYNE LANKFORD AND ROBERTA GRESHAM,** who are the relators in Cause No. CV-35,254-01-11, pending on the docket of the County Court at Law No. 1 of Angelina County, Texas. Said petition for writ of mandamus having been filed herein on June 4, 2015, and the same having been duly considered, because it is the opinion of this Court that a writ of mandamus should not issue, it is therefore CONSIDERED, ADJUDGED and ORDERED that the said petition for writ of mandamus be, and the same is, hereby **denied**.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*