ACCEPTED
12-15-00149-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
7/2/2015 11:02:11 AM
CATHY LUSK
CLERK

# No. 12-15-00149-CV

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

7/2/2015 11:02:11 AM

CATHY S. LUSK
Clerk

In the Court of Appeals
for the Twelfth District of Texas
at Tyler

# In Re

# Charles Dwayne Lankford and Roberta Gresham,

## *Relators*

# Relators' Reply

ROBERT L. FLOURNOY
STATE BAR NO. 07173000
LAW OFFICES OF
ROBERT L. FLOURNOY
P. O. BOX 1546
LUFKIN, TEXAS 75902-15460
TELEPHONE: (936) 639-4466
FACSIMILE: (936) 634-3190

*Attorney for Relator
Roberta Gresham*

ROBERT T. CAIN, JR.
STATE BAR NO. 03607200
ROBERT ALDERMAN, JR.
STATE BAR NO. 00979900
ALDERMAN CAIN & NEILL PLLC
122 EAST LUFKIN AVENUE
LUFKIN, TEXAS 75901-2805
TELEPHONE: (936) 632-2259
FACSIMILE: (936) 632-3316

*Attorneys for Relator Charles Dwayne
Lankford*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... 1

INDEX OF AUTHORITIES ................................................................... 3

ISSUES PRESENTED ........................................................................... 5

ARGUMENT AND AUTHORITIES ...................................................... 5

I.  Update to the Procedural History of this Case .............................. 5

II.  Stephanie asks the Court to decide this case based
     on documents that are not evidence ............................................... 6

     A.  Her pleading and affidavit are not evidence ......................... 6

     B.  The child's interview in chambers is not evidence ................. 8

III.  Many of Stephanie's statements of "fact" are not
      supported by the record ................................................................ 9

IV.  Stephanie does not address the importance of standing
     as protecting parents' constitutional rights ................................. 13

V.  Standing requires more than developing a "close relationship"
    with the child ................................................................................ 14

VI.  "Care, custody and control" under the statute means
     something more than possession at the sufferance
     of the parent ................................................................................ 14

VII.  The trial court should not have considered T.D.L.'s
      interview to determine standing ................................................ 18

CONCLUSION ........................................................................ 19

PRAYER  …............................................................................. 20

SIGNATURE ...................................................................... 20-21

CERTIFICATION OF REVIEW ............................................ 21

CERTIFICATE OF COMPLIANCE WITH
TEX. R. APP. P. 9.4(I) ......................................................... 22

CERTIFICATE OF SERVICE .............................................. 23

AFFIDAVIT OF ROBERT L. FLOURNOY ........................... 24

INDEX TO SECOND SUPPLEMENTAL RECORD

SECOND SUPPLEMENTAL RECORD

# INDEX OF AUTHORITIES

## CASES:

*In re Contractor's Supplies, Inc.*, No. 12-09-00231-CV, 2009
WL 2488374 (Tex. App.—Tyler Aug. 17, 2009)
(orig. proceeding) ............................................................................ 7

*Crawford v. Washington*, 541 U.S. 61-62 (2004) ...................................... 9

*In re C.T.H.S.*, 311 S.W.3d 204 (Tex. App.—Beaumont
2009, pet. denied)……………………………………………………13

*In re K.K.C.,* 292 S.W.3d 788 (Tex. App.—Beaumont 2009) ............ 15, 16

*In re K.K.T.,* No. 07-11-00306-CV, 2012 WL 3553006
(Tex. App. – Amarillo Aug 17, 2012, no pet.) (mem. op.) ....... 15, 16

*Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*,
904 S.W.2d 656, 660 (Tex. 1995) ..................................................... 7

*In re M.K.S.-V.*, 301 S.W.3d 460
(Tex. App.—Dallas 2010) ............................................................... 16

*In re M.P.B.*, 257 S.W.3d 804 (Tex. App.—Dallas
2008, no pet.) ................................................................................. 16

*Nat'l Med. Fin. Servs., Inc. v. Irving Indep. Sch. Dist.*,
150 S.W.3d 901, 905 (Tex. App.—Dallas 2004, no pet). .................. 7

*Nichol v. Nichol*, No. 07-12-00035-CV, 2014 WL 199652
(Tex. App.—Amarillo Jan. 15, 2014, no pet.)................................. 9

*In re N.I.V.S.,* 2015 WL 1120913 (Tex. App.—
San Antonio March 11, 2015) (mem. op.) ..................................... 16

*In re Russell*, 321 S.W.3d 846
(Tex. App.—Fort Worth 2010, orig. proceeding) .......................... 13

*State for Best Interest of S.E.*, No. 12-14-00246-CV, 2014
    WL 6977816 (Tex. App.—Tyler Dec. 10, 2014, no pet.) .................. 7

## RULES AND STATUTES:

TEX. FAM. CODE (Vernon 2014)

§ 102.003(a)(9) ...................................................................... 5

§ 153.009 ........................................................................... 5, 8

§ 153.009(b)......................................................................... 18

§ 153.131(a) ......................................................................... 13

TEX. R. EVID.

801(d) .................................................................................. 7, 8

802 ....................................................................................... 7

## ISSUE PRESENTED

Respondent abused his discretion when he ruled that the child's step-mother has standing to commence a suit affecting the parent-child relationship under Section 102.003(a)(9) of the Family Code, which would require her to have had "actual care, custody, and control over the child for at least six months . . . ."

## ARGUMENT AND AUTHORITIES

Stephanie's response to the petition for mandamus distorts the record and fails to engage the substantive arguments made by Relators.

## I.    Update to the Procedural History of this Case.

At Stephanie's request (R233), the trial court interviewed T.D.L. in chambers, as authorized by Section 153.009 of the Family Code.[1] After this Court directed her to respond to the mandamus petition in this proceeding, Stephanie asked the trial court to unseal the interview and allow it to be transcribed so that it could be presented to this Court. 2d Supp. R. at 1. Relators objected, pointing out that the interview had nothing to do with the standing question, the child was not under oath, and the parties were not given the opportunity to cross-examine her. *Id.*

---

[1] TEX. FAM. CODE ANN. § 153.009 (Vernon 2014).

at 3. At a hearing on the motion held on June 24, 2015, the trial court granted Stephanie's motion (*Id.* at 6) and announced that "lots of responses [in the interview] did assist me in forming my opinion to allow step-mother to have standing . . . . " *Id.* at 14.

Therefore, Stephanie attached a transcript of the interview to her response to the petition; we have attached copies of the relevant motions and a transcript of the hearing where the trial court announced his ruling. References to the transcript of the interview will be cited as "1st Supp. R.," and references to the documents attached to this reply will be cited, "2d Supp. R."

## II. Stephanie asks the Court to decide this case based on documents that are not evidence.

Before we address the substance of Stephanie's argument, we must first object to her citations to documents that are not evidence.

### A. Her pleading and affidavit are not evidence.

At least fifteen times she offers to prove an asserted fact by citing to her own pleading and affidavit, which are at pages 26-31 of the record attached to our Petition. Those citations may be seen in Stephanie's Response at 3-6, 8-9, 11-12. It should be no surprise that

Stephanie's statements in these documents are self-serving and conclusory.

There are three problems with Stephanie's reliance on her pleading and affidavit. First, neither was admitted into evidence, and documents not admitted into evidence cannot be considered as proof. *In re Contractor's Supplies, Inc.*, No. 12-09-00231-CV, 2009 WL 2488374, at \*5 (Tex. App.—Tyler Aug. 17, 2009) (orig. proceeding); *Nat'l Med. Fin. Servs., Inc. v. Irving Indep. Sch. Dist.*, 150 S.W.3d 901, 905 (Tex. App.—Dallas 2004, no pet.).

Second, pleadings are generally not competent evidence, even if they are sworn or verified. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *State for Best Interest of S.E.*, No. 12-14-00246-CV, 2014 WL 6977816, at \*2 (Tex. App.—Tyler Dec. 10, 2014, no pet.).

Third, even if the affidavit had been offered as evidence, it would have been inadmissible hearsay – an out-of-court statement "offered . . . to prove the truth of the matter asserted." TEX. R. EVID. 801(d), 802.

Neither the pleading nor the affidavit should have been considered as evidence by the trial court, and this Court should not rely upon them, either.

**B.    The child's interview in chambers is not evidence.**

Stephanie also repeatedly cites as evidence statements made by T.D.L. in an in-chambers interview, which the trial court conducted outside of the presence of the parties and their counsel. 1 Supp. R at 4. This interview, requested by Stephanie (R233), was appropriate for determining the child's wishes as to conservatorship. TEX. FAM. CODE ANN. § 153.009 (Vernon 2014).

But the very nature of an in-camera interview makes it inappropriate for evidence on a contested issue such as standing. It is no surprise that Judge Register was very kind to the child and questioned her gently. He should not have done otherwise in that circumstance.

But when it comes to the standing question, the child's statements at the interview were inadmissible hearsay, since those statements were not made "while testifying at the trial or hearing." TEX. R. EVID. 801(d).

The child was not under oath or admonishment to tell the truth, and her statements were inadmissible for that reason. *Nichol v. Nichol*, No. 07-12-00035-CV, 2014 WL 199652, at *2 (Tex. App.—Amarillo Jan. 15, 2014, no pet.)

Counsel did not have the opportunity to pose questions to her in order to draw out explanations or additional information. Cross-examination, however gentle it may be, is the best means our judicial system offers for determining truth. *See Crawford v. Washington*, 541 U.S. 61-62 (2004).

Until the June 24 hearing, Relators did not know that the trial court based his ruling, in part, on the child's in-camera statements; therefore, they were never given the opportunity to object ahead of time.

## III. Many of Stephanie's statements of "fact" are not supported by the record.

Some things Stephanie says in her brief are simply not true. For example, on page 12, Stephanie claims that Roberta, the grandmother, was "unable to respond correctly" when asked about T.D.L.'s age. In

fact, Roberta correctly answered that the child was twelve years old (R203), almost thirteen (R204).[2]

In the very next sentence, Stephanie claims that in her interview, T.D.L. told the judge that the home where Charles, T.D.L., and Stephanie had lived belonged to Stephanie, citing 1st Supp. R. 6:22-23. In fact, T.D.L. said nothing of the kind. (And if she had said that, how would a twelve-year-old have known whether it were so?)

Then Stephanie says that she enrolled T.D.L. in school. That is not so, and Stephanie admitted as much on the stand: "Ms. Gresham took her to enroll." R193. According to the uncontradicted evidence, Charles signed papers in 2011 to authorize T.D.L. to transfer from Hudson I.S.D. to Diboll. Resp. Exh. 1, 2 (R268-89). Charles also made the decision to transfer her back to Hudson in 2013. R121-22. Stephanie did not have authority to sign the necessary papers, so she asked Roberta to sign the authorization for that transfer. R196, 278.

---

[2] The exact exchange at R203 was as follows: "Q: This is a - - how old is she now? A: How old is she? Q: Yes. A: She's 12 now. She'll be twelve the 21st of March. Q: Okay. She's almost a 13-year old child. . . . ." R203, *ll*. 9-14. The second part of her sentence was either a slip of the tongue, understood as such by all, or an error in transcription. On the next page, Roberta testified, "I imagine she dresses herself. She's 13 almost." R204, *l*. 24. Stephanie's brief confirms that T.D.L. was born March 2, 2002. Resp. at 2.

But, Stephanie says, only she and her family were on the school pickup list! And that, she says, shows the "apathy and inattentiveness" of Charles and Roberta. Resp. at 17. This is not true at any level. Roberta *is* listed on the first page of the form as a "guardian." Pet. Exh. 1 (R275). The other contacts listed on the next page may "also" pick up the child. R276. And nothing on this form can be taken as showing anyone's "apathy or indifference:" Stephanie admits that she herself filled out the form on October 14, less than a month before she filed for divorce. R192. The document speaks for Stephanie's attitude and no one else's. She did not bother to list her husband, the child's father, at all.

Stephanie's form contrasts with the one Roberta filed the previous year. R277-84. The earlier form lists Roberta as guardian and Charles as father. R278. Stephanie is shown as "step-mom" on the pick-up list, along with Stephanie's mother. R279. Stephanie says that she filled out that form, too. R193. But she needed it signed by Roberta, so she put Roberta and Charles's names on it.

With no citation to the record, she asserts that Charles "was willing to give Stephanie all legal right to make decisions for the child." Resp. at 23. As Stephanie admitted under oath, Charles never signed

any papers giving Stephanie any rights over T.D.L. R. 163-64. Charles had once signed a power of attorney giving Roberta rights to make decisions over T.D.L., but he never did that for Stephanie. R122-23, 131. (He did give Stephanie, Roberta, and another woman medical authorizations for T.D.L.'s treatment in his absence. R123, 134, 265.)

Stephanie claims that Roberta "relinquished care, control and possession of T.D.L. to Charles and Stephanie." Resp. at 8. She cites only her own affidavit (i.e., no evidence) to support this allegation. Roberta testified that she gave rights only to her son, in custody orders. R196-97.

Stephanie also complains that Charles and Roberta did not attend T.D.L.'s games. Resp. at 19-20. Charles, of course, timed his visits home for when T.D.L. was not in school so that he could spend more time with her. R159. Naturally, there were no games or extracurricular activities during those times, but surely it was more important that he spend one-on-one time with his daughter.

Roberta's hours of work kept her away from the games: she worked until 10:00 in the evening. R202. Now that Roberta is not working, "I would not be given a schedule of her games, and I was told

not to the [*sic*] come." R202. Evidently Stephanie wanted to make sure that she "and her family are T.D.L.'s biggest fans." Resp. at 19.

## IV. Stephanie does not address the importance of standing as protecting parents' constitutional rights.

In an original suit affecting the parent-child relationship, the Family Code includes a "parental presumption" that entitles the parent to be appointed sole managing conservator (or joint managing conservator with the other parent) unless the court finds such appointment "would significantly impair the child's physical health or emotional development . . . ." TEX. FAM CODE ANN. § 153.131(a) (Vernon 2014). That presumption does not exist in modification proceedings such as this one. *See* Pet. for Mand. at 12-13.

Thus, the concept of standing is the only legal doctrine that acts to protect parents' constitutional rights to supervise the rearing of their children. It is their recognition of his that has led the Fort Worth and Beaumont courts to insist on a bright-line test for standing. *In re Russell*, 321 S.W.3d 846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding); *In re C.T.H.S.*, 311 S.W.3d 204, 208 (Tex. App.—Beaumont 2009, pet. denied).

Stephanie's response does not address this issue. This is not surprising, since it cannot help her if the Court considers Charles's liberty interest in rearing his own daughter.

## V. Standing requires more than developing a "close relationship" with the child.

Instead, Stephanie repeats the refrain that she has "developed and maintained a relationship with [the] child over time." *See* Resp. at 11; *see also id.* at 12,14, 25. That cannot be a sufficient test. A good teacher or a coach develops close relationships with the children under his or her care; that does not give them standing in suits affecting the parent-child relationship.

## VI. "Care, custody, and control" under the statute means something more than possession at the sufferance of the parent.

Even if the Court is unwilling to adopt the rigorous, bright-line rule of the Beaumont and Fort Worth courts, Stephanie has not shown standing. She had physical possession of T.D.L., but standing requires something more. Stephanie's possession depended on Charles's will, and what she did with T.D.L. depended on what he said.

Charles was heavily involved in the child's life, calling home four to five times a day, by Stephanie's count. R167. He made the decisions

about where T.D.L. lives, where she goes to school, and who are her medical providers. R133-34. He made decisions about her discipline. R120, 150.

Charles did sign medical authorizations with T.D.L.'s pediatrician that allowed Stephanie to secure medical treatment for the child in his absence. R123, 164. But one of those authorizations also gave permission to Roberta and to Lisa LeBlanch, who was a friend of Roberta's who sometime babysat T.D.L. Mov. Exh. 4 (R265), R125. T.D.L. did not require hospitalization or surgery while Charles was away. R165.

The facts of this case are similar to those in *In re K.K.T.*, No. 07–11–00306–CV, 2012 WL 3553006, at *4 (Tex. App.—Amarillo Aug. 17, 2012, no pet.) (mem. op.). The court noted that "[t]he undisputed evidence shows that the father's temporary incarceration played a heavy role in the arrangements for the children's care during the time in question, and shows that maintenance of those arrangements hinged on the mother's will." *Id.* at *3 (emphasis supplied). The grandfather's care did not "demonstrate the exercise of authority to guide and manage the children, beyond the control that is implicit in the possession and

care of three-and five-year-old children." *Id.*, citing *In re K.K.C.*, 292 S.W.3d 788, 792 (Tex. App.—Beaumont 2009). T.D.L. was a little older, but Stephanie has shown nothing more than the control implicit in possession of a child T.D.L.'s age.

Some courts – not Fort Worth or Beaumont – employ a looser test for standing when they face custody-sharing arrangements, as in *In re M.K.S.–V.*, 301 S.W.3d 460, 463 (Tex. App.—Dallas 2009, pet. denied), and *In re M.P.B.*, 257 S.W.3d 804, 809 (Tex. App.—Dallas 2008, no pet.).

Even courts that cite a more relaxed rule of standing (compared to Fort Worth and Beaumont) are more careful when the non-parent has been living with the parent. One example of this is *In re K.K.T.* Another is *In re N.I.V.S.*, No. 04–14–00108–CV, 2015 WL 1120913 at *5 (Tex. App.—San Antonio Mar. 11, 2015, no pet. h.). In that case, the court acknowledged that the non-parent was heavily involved in children's lives. Nonetheless, the children's mother "was at all times in control of decisions regarding the children's welfare, including their health care and education," and the former live-in lacked standing. 2015 WL 1120913 at *5.

Different rules, or at least different levels of scrutiny, are appropriate for the two types of cases. When the parent has already agreed that another person in a separate household may share custody of the child, it is more reasonable to conclude that there has been some relinquishment of control. When the parent and non-parent share the same household, courts should be more reluctant to find a relinquishment of control or abdication of responsibility. When the non-parent makes breakfast for the child or drives her to school, it can never be clear that she is acting on her own, contrary to the parent's will. People can share household responsibilities without giving up rights to their children.

Charles Lankford is away from home longer than he would like. The nature of his work required it, and that work was undertaken with Stephanie's approval (R157-58), and it benefited Stephanie and her son, as well as T.D.L. (R158-59). The money Charles earned even allowed Stephanie not to work outside the home. *See* Pet. at 7 n. 2. But many a parent is away longer than he or she would wish, whether it is a doctor or lawyer, who must spend long hours at the hospital or in the office, an

offshore oil worker, or a salesman or businessman who must live most of his life out of his suitcase.

Are these parents at risk of losing possession of their children to their second spouses? And if so, would they face the same risk from a nanny, housekeeper, or au pair? They, too, "develop a close relationship with the child over time." If Stephanie has standing, why wouldn't a nanny?

## VII. The trial court should not have considered T.D.L.'s interview to determine standing.

There is no question that the trial court considered the child's interview statements in determining whether Stephanie had standing:

- "[T]here [were] lots of responses [in the interview] did assist me in forming my opinion to allow step-mother to have standing . . . ." 2d Supp. R. at 14.

- "And I think her points made in her interview were very important in the decision making by the court." *Id.* at 15.

- "[Y]ou will see in the record from the youngster that there are relevant facts therein to make a decision on standing." *Id.* at 14.

While Section 153.009(b) allows the court to consider the interview to "determine the child's wishes as to . . . any other issue in the suit

affecting the parent-child relationship," that is limited to determining the *child's wishes*, not a legal question such as standing. If her testimony were to be considered for such purposes, it would have to conform to the rules of evidence, i.e., under oath, in court (as opposed to hearsay), and with the opportunity for counsel to pose questions and cross-examine her.

Not only did he rely upon incompetent evidence directly, the trial court allowed it to color his weighing of the testimony of actual witnesses. 2d Supp. R. at 13-14. Specifically, the child's interview encouraged him to give undue weight to Stephanie's physical presence in the home, to disregard Charles's direction and guidance of Stephanie and the child over the telephone, and even to forget that Charles called Stephanie three to five times a day. R120, 138, 159, 167.

The issue at the hearing was standing, not custody, and the trial court abused his discretion when he considered T.D.L.'s statements.

## CONCLUSION

Stephanie Smith advocates a very lax standard for standing that would make parents' custody of their children vulnerable to claims by stepparents and others who may be living with the parent and child.

Charles Lankford, remains deeply involved in his daughter's life. Charles has not relinquished his parental control, and the Court should grant this petition to protect his right to rear his daughter.

## PRAYER

For the reasons stated, and for those stated in their original Petition for Mandamus, Charles Dwayne Lankford and Roberta Gresham, Relators, pray that the Court issue a writ of mandamus directing the trial court to (1) vacate its order of May 12, 2015, overruling their pleas to the jurisdiction, (2) vacate its temporary orders dated May 12, 2015, and (3) dismiss Stephanie Smith's motion to modify for want of jurisdiction. Relators also request such other and further relief as may be just.

Respectfully submitted,

ALDERMAN CAIN & NEILL PLLC
122 East Lufkin Avenue
Lufkin, Texas 75901-2805
Telephone: (936) 632-2259
Facsimile: (936) 632-3316
By: /s/ Robert T. Cain, Jr.
Robert T. Cain, Jr.
State Bar No. 03607200
*rcain@aldermancainlaw.com*
Robert Alderman, Jr.
State Bar No. 00979900
*balderman@aldermancainlaw.com*

*Attorneys for Relator*
*Charles Dwayne Lankford*

Robert L. Flournoy
State Bar No. 07173000
bob@rlflournoylaw.com
LAW OFFICE OF
ROBERT L. FLOURNOY
P.O. Box 1546
Lufkin, Texas 75901
Telephone: (936) 639-4466
Facsimile: (936) 634-3190

*Attorney for Relator*
*Roberta Gresham*

## CERTIFICATION OF REVIEW

Pursuant to Texas Rule of Appellate Procedure 52.3(j), the undersigned counsel for Relator certifies that he has reviewed this Reply and concluded that every factual statement in the Reply is supported by competent evidence included in the Appendix or Record.

*/s/ Robert T. Cain, Jr.*
Robert T. Cain, Jr.

**CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4(i)**

This brief was prepared in Century Schoolbook 14 pt. typeface (12 pt. for footnotes) using Word for Mac 2011, and, in reliance on the word count of the computer program used to prepare the document, I certify that this petition contains 2,954 words, excluding those matters excluded by Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Robert T. Cain, Jr.*
Robert T. Cain, Jr.

## CERTIFICATE OF SERVICE

I certify that the foregoing reply was electronically filed with the Clerk of the Court using the electronic case filing system of the Court. I also certify that a true and correct copy of the foregoing was served via e-service or email on the following counsel of record:

·    Mr. Thomas W. Deaton
     *tommydeaton@lufkinlaw.com*
     Ms. Carolyn Carter Bell
     *cbell@lufkinlaw.com*
     DEATON LAW FIRM
     103 East Denman Avenue
     Lufkin, Texas 75901

     *Counsel for Real Party in Interest Stephanie Smith*

and

·    The Hon. Joe Lee Register
     P. O. Box 190
     Lufkin, Texas 75901
     *lberry@angelinacounty.net*

     *Respondent*

on July 2, 2015.

> */s/ Robert T. Cain, Jr.*
> Robert T. Cain, Jr.

# AFFIDAVIT OF ROBERT L. FLOURNOY

STATE OF TEXAS        §
                            §

COUNTY OF ANGELINA   §

BEFORE ME, the undersigned authority, on this day personally appeared Robert L. Flournoy, who being by me first duly sworn, stated on his oath the following:

"My name is Robert L. Flournoy. I am over twenty-one years of age, am of sound mind, and competent to make this affidavit. Unless otherwise stated, all facts set for in this Affidavit are true and based on my personal knowledge.

"I am the attorney for one of the Relators in the case below, and have been such ever since the case below was filed. The following documents attached hereto are true and correct copies of the originals filed in the case below:

1. Motion to Unseal Court Record.

2. Opposition to Motion to Unseal.

3. Order on Motion to Unseal

"Also attached is a true copy of a transcript of a hearing held in the case below on June 24, 2015.

"Said documents are material to Relators' claim for relief in this proceeding and are included in the record in support of Relators' Petition for Writ of Mandamus."

Further Affiant saith naught.

_____
Robert L. Flournoy

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the _30_ day of June, 2015, to certify which witness my hand and seal of office.

_____
Notary Public - State of Texas

GERALDINE WILLIAMS
MY COMMISSION EXPIRES
November 28, 2018

25

# INDEX TO SECOND SUPPLEMENTAL RECORD.

| Title | Record Page No. |
|---|---|
| Motion to Unseal Court Record | 1 |
| Opposition to Motion to Unseal | 3 |
| Order on Motion to Unseal Court Record | 6 |
| Transcript of Hearing on Motion to Unseal Court Record held on June 24, 2015 | 7 |

# SECOND SUPPLEMENTAL RECORD



NO. DV-35,254-02-11

| IN THE INTEREST OF | § | IN COUNTY COURT AT LAW |
| | § | |
| T.D.L. | § | NUMBER ONE |
| | § | |
| A CHILD | § | ANGELINA COUNTY, TEXAS |

## MOTION TO UNSEAL COURT RECORD

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Stephanie Smith, Petitioner, in the trial court and a real party in interest in the appellate court, and would show the Court as follows:

Respondents, Charles Duane Lankford and Roberta Gresham, have filed a Petition for Writ of Mandamus in this matter.

The Twelfth Court of Appeals has requested that Petitioner as a real party in interest file a response Relator's petition on or before Friday, June 26, 2015.

On March 6, 2015, the trial court interviewed the child in chambers and a record of the interview was made by the Court's reporter and sealed.

Petitioner requests that the Court of Appeals hearing the Writ of Mandamus should have the benefit of reviewing the record of the testimony as transcribed in that this testimony is a part of the record and requests that the trial court unseal the record so that a transcript can be made.

Petitioner prays that the Court grant this Motion to Unseal Court record.

Respectfully submitted,

DEATON LAW FIRM
103 East Denman
Lufkin, TX 75901
Tel: (936) 637-7778
Fax: (936) 637-7784

By: _____
Thomas W. Deaton

001

State Bar No. 05703500
cbell@lufkinlaw.com
Attorney for Stephanie Smith

### Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on June 23, 2015.

_____
Thomas W. Deaton
Attorney for Stephanie Smith

No. DV-35,254-02-11

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN COUNTY COURT AT LAW |
| | § | |
| T.D.L., | § | NUMBER ONE |
| | § | |
| A CHILD | § | ANGELINA COUNTY, TEXAS |

FILED
15 JUN 24 AM 11: 24

## OPPOSITION TO MOTION TO UNSEAL

TO THE HONORABLE JUDGE OF SAID COURT:

Charles Dwayne Lankford and Roberta Gresham respectfully request that the Court deny Stephanie Smith's Motion to Unseal Court Record and would respectfully show:

1. The sole issue in the mandamus proceeding is whether Stephanie Smith has standing to commence a suit affecting the parent-child relationship. Standing is a jurisdictional matter under Chapter 102 of the Family Code.

2. The Court's interview with the child, in chambers, was conducted not under Chapter 102 but under Chapter 153, for the purpose of determining the child's wishes as to conservatorship. The interview did not relate to the question of Stephanie Smith's standing or any other matter relating to jurisdiction.

3. The child was not under oath at the interview, so nothing she said was competent evidence as to whether Ms. Smith had standing. None of the parties was present at the interview, and their counsel did not have the opportunity to pose questions to the child or to cross-examine her.

4. Opponents are confident that the Court did not consider the child's statements in the interview when it decided the issue of standing. Otherwise, Respondents would have been denied their rights of due process under the Texas and federal constitutions, and the Court would have abused its discretion.

1

5.      Were the Court to unseal the interview, it would effectively state that the Court did consider the same in determining standing. There could be no other reason to make it a part of the mandamus record.

6.      Since the interview had nothing to do with the interest of standing and did not affect the Court's decision on that point, to unseal the record – much less make it a part of the appellate record, as Petitioner asks – would be fruitless at this time, would needlessly betray the child's expectation that what she told the Court would be confidential, and would invade her privacy. It could needlessly damage the child's relationships with those who love her, who are the parties to this proceeding.

For the reasons stated, Respondents pray that the Motion to Unseal Court Record be denied and grant them such other and further relief as may be just.

Respectfully submitted,

ALDERMAN CAIN & NEILL PLLC
122 East Lufkin Avenue
Lufkin, Texas 75901-2805
Telephone: (936) 632-2259
Facsimile:  (936) 632-3316

By:_____
    Robert Alderman, Jr.
    State Bar No. 00979900
    *balderman@aldermancainlaw.com*

*Attorneys for Charles Dwayne Lankford*

2                                                        004

Robert L. Flournoy
State Bar No. 07173000
*bob@rlflournoylaw.com*
LAW OFFICE OF
ROBERT L. FLOURNOY
P.O. Box 1546
Lufkin, Texas 75901
Telephone: (936) 639-4466
Facsimile: (936) 634-3190

*Attorney for Roberta Gresham*

## CERTIFICATE OF SERVICE

I certify that the foregoing response was served by facsimile transmission to:

- Mr. Thomas W. Deaton
  DEATON LAW FIRM
  103 East Denman Avenue
  Lufkin, Texas 75901
  Fax Number: (936) 637-7784

*Counsel for Petitioner Stephanie Smith*

on June 24, 2015.

Robert Alderman, Jr.

NO. DV-35,254-02-11

| IN THE INTEREST OF | § | IN COUNTY COURT AT LAW |
| | § | |
| T.D.L. | § | NUMBER ONE |
| | § | |
| A CHILD | § | ANGELINA COUNTY, TEXAS |

## ORDER ON MOTION TO UNSEAL COURT RECORD

On June 23, 2015, the Court considered Stephanie Smith's Motion to Unseal Court Record of T.D.L, a minor, and ORDERS: that the Motion to Unseal Court Record is GRANTED pursuant to Texas Family Code §153.009(f).

IT IS ORDERED that the Clerk of the Court shall unseal the transcript of the Court's interview with the child the subject of this suit conducted on or about March 6, 2015. IT IS FURTHER ORDERED that the Court Reporter shall transcribe the interview in that it is a part of the record in this matter.

SIGNED on ___June 24, 2015.___

_____
JUDGE PRESIDING

REPORTERS RECORD
VOLUME 1 OF 1 VOLUMES

TRIAL COURT CAUSE NO. DV-35254-02-11

IN THE INTEREST OF:          )     IN THE COUNTY COURT

MIKEL DWAYNE LANKFORD        )     AT LAW NUMBER ONE

AND TORRANCE DEANN           )

LANKFORD, CHILDREN           )     ANGELINA COUNTY, TEXAS

_____

MOTION HEARING

_____

On the 24th day of June, the following proceedings came on to be heard in the above-styled and numbered cause in County Court at Law No. 1 before the Honorable Joe Lee Register, Judge Presiding, held in Angelina County, Texas.

Proceedings reported by computerized stenotype machine.

Wendy Wilkerson
Official Court Reporter
County Court at Law No. 1

APPEARANCES


REPRESENTING PETITIONER MR. LANKFORD:

                    MR. ROBERT ALDERMAN, JR.
                    Attorney at Law
                    Alderman & Cain
                    122 E Lufkin Ave.
                    Lufkin, Texas 75901
                    (936) 632-2259


REPRESENTING RESPONDENT:

                    MR. ROBERT L. FLOURNOY
                    Attorney at Law
                    P.O. Box 1546
                    Lufkin, Texas 75901
                    (936) 639-4466


REPRESENTING PETITIONER MS. SMITH:

                    MR. TOMMY DEATON
                    Attorney at Law
                    P.O. Box 1964
                    Lufkin, Texas 75902
                    (936) 637-7778

P R O C E E D I N G S

June 24, 2015

THE COURT: Gentleman, it's come to my attention Mr. Deaton filed a motion with the Court requesting that he be able to secure a copy of the record of the testimony or statements given by the minor child in this matter, T.D.L. in my chambers, and one of the purposes of having that record unsealed and for him to be able to secure a copy of it.

I received that request, or motion, and I contacted Mr. Alderman and said I will not do that until such time I've given everybody an opportunity to visit the law on the issue and also to have your say on the matter.

Mr. Flournoy, you have the same course right as both those two guys.

MR. FLOURNOY: And I've seen the motion and response and I concur with all that.

THE COURT: All right. Okay. Are you, I assume that, but you're opposing the unsealing?

MR. FLOURNOY: I am, Your Honor. I think it's immaterial.

THE COURT: Well, I did take it on myself to do a little research on this matter, and Mr. Flournoy, I will email to your office a paper written by one of the familiar faces in the family law bar in dealing with trends and

appellate cases involving especially standing, it's a well-written paper and I will commend your reading to that once I get your email address and send it both to Mr. Alderman and Mr. Deaton on the matter.

Mr. Deaton, you've made a request for the record to be sealed, I mean what is your position on the request?

MR. DEATON: Well, our position is, Judge, under Section 153 point, what is that, 009 that we're entitled to have a record supplemented to include the interview with the minor child. And I might, if I remember correctly with judge the interview was transcribed only because Mr. Alderman requested it be transcribed. And so I think we're entitled to have the record supplemented and go up with the, on the writ of mandamus proceeding so the court can at least review it to see if it has any application. And I don't think, I think it's pretty much standard procedure,

Judge, so we're requesting it be transcribed in compliance with our motion and order Mr. Powers to transcribe and supplement the record with it.

THE COURT: Mr. Alderman.

MR. ALDERMAN: Yes, sir, brief response. And I believe --

THE COURT: I read your motion of opposition to the same.

MR. ALDERMAN: Well, my comments are going to be

consistent with that response, Your Honor. I acknowledge that for purposes of Chapter 153 that the interview is should be part of the record for purposes of Chapter 153 issues considering the interview was requested by opposing counsel when the interview was conducted I did request on behalf of my clients it at least be transcribed and I believe it was the Court's own motion sealed it at the time and for whatever period it was going to remain sealed never really addressed for purposes of 153 certainly the statute says it's entitled to be made part of the record. The basics of our motion to oppose is this that 153 deals with conservatorship it does not deal with standing. One or two deals with standing. The mandamus that is before the Court, the mandamus that is part of this court proceeding and is pending before the appellate court deals only with Chapter one or two. I don't believe that a record of that interview would be proper testimony for that. And on that basis is why I am requesting that it not be unsealed at this time simply because what we have pending before the court is only on one or two.

I understand there are a couple of cases that deal with the automatic right to have the record transcribed. I reviewed all of those cases. All of those cases deal with 153 issues none of those cases deal with standing issues. That's our standing, Your Honor.

THE COURT: Mr. Flournoy.

MR. FLOURNOY: Mine is same. No use repeating it.

THE COURT: Mr. Deaton, response.

MR. DEATON: Yes, just briefly, Judge. You know, I think that is within the purview of the title of Court to determine if the interview of the child has any application to this and remember the questions that we're talking about are care, custody and control of this child. To the extent that the interview bears on that I think the court ought to have access to it so they can make an informed decision to say it's not Mr. Alderman does not know, he doesn't know and Mr. Flournoy doesn't know and I don't know at this point but I would like to have the court have access, they make a determination if they determine it's not applicable then I'm sure they won't consider it but I think they're entitled to have it.

MR. ALDERMAN: If I might, Your Honor, the motion to confer that was presented by opposing counsel specifically dealt with conservatorship issues, did not deal with the standing issue, there was no reason at the time in our clients' mind and Mr. Flournoy's clients to believe that anything dealing with the conference was going to be dealing with standing issues. We certainly had no right or opportunity to address whatever that testimony may have been nor had we had any reason to believe that whatever that testimony may have

been and I say testimony, it was comments I don't know it was sworn testimony or not it was in front of us and we didn't have any opportunity to address it but there was still no reason to believe it was going to be part of the court's consideration of the standing issues. Those items have also been addressed in this opposition I'm simply reiterating those. Thank you, Your Honor.

THE COURT: First of all, neither three of you have the benefit of knowing what the young lady stated. Or I have made some comments I think to some of you as to dislikes that youngster had. In this matter it's hard for me as a judge to interview a child in chambers and to block my ears on the part of things the child relates to me but at the same time when I interview the child and in this case the crux of the case, that is the main point and argument is standing. I would say probably half of the comments that the young lady made to me dealt with questions that I propounded to her relating to who's been the caretaker which probably goes to the heart of the issue that both of you find yourselves and tied up in court of appeals now.

I did rely heavily on the comments of the child as to sorting out which one of the witnesses that you produced in court was basically telling one side of the story and the other one telling another side of the story. This young lady made it very clear who was the responsible adult for her care

for not one year but a number of years. Save and except a period of time her father was in the United States for the period of 35 days each year she did relate to me that the grandmother had probably been in the picture only on a few occasions in the last couple of years.

In looking at it and I have actually asked many colleagues as to the thoughts and I have had an opportunity to view all the cases involved it's kind of hard when you're having a custody issue and there's standing is an issue that you don't look at the care, custody and control of the child. Sometimes judges say I'm going to go with the status quo on temporary orders because that's what's been going on. But in the case involving this young lady there was lots of responses that did assist me in forming my opinion to allow step-mother to have standing because I wanted to make sure who this young lady believed to be her caretaker, which I think is extremely important in this case.

In viewing, and Mr. Alderman, to the difference in one or two, Section one or two and 153 of the Family Code I think you probably can't take one without the other but at the same time does what the young lady spoke about have anything to do with standing. And I think you're going to find once you review the record that you're going to find that was a high part of it and her statements were on point on those issues.

So, I can't say that I turned deaf ears to her

on those points in trying to rule on this matter. But I think probably the right thing to do is allow the court of appeals to look at this case and determine because I want everybody to have a fair shot in their argument who has standing who doesn't have standing. And I think her points made in her interview were very important in the decision making by the court. I also looked in the Section 153 of the Texas Family Code sub-section F says on the motion of the parties, amicus attorney or attorney ad litem for child or court's own motion the court shall cause a record of the interview to be made when the child is 12 years of age or older. I think in this matter I don't think there's any question the child is 12 years of age or older. That's not an issue. Further says a record of the interview shall be made part of the record in this case.

I did look at the Nichol case. I'm not sure if it makes a big difference whether or not you place it in standing issue or place it in the 153 in this matter but it appears that from my prospective and what you will see in the record from the youngster that there are relevant facts therein to make a decision on standing. I want to give the court of appeals the most information they have in its being able to rule on this matter this is a case and the subject matter. Both of you realize there's been lots of different courts of appeals with different opinions in this matter and I don't know if it's ever going to end. Only way for it to end is for the

Supreme Court to take this matter up.

But I will grant the order unsealing the transcription and the record of the child's statements in my interview with her and I believe that is probably made part of the record and feel what the court of appeals really needs to look at to look at the entire case before them and I'll sign an order accordingly.

MR. ALDERMAN: Thank you, Your Honor.

MR. DEATON: Thank you, Judge. May we be excused?

THE COURT: Yes. And thank you for coming in on short notice.

(Proceedings concluded.)

THE STATE OF TEXAS )

COUNTY OF ANGELINA  )

I, Wendy Wilkerson, Official Court Reporter in and for the County Court at Law of Angelina County, State of Texas, do hereby certify that the above and foregoing pages contain a true and correct transcription to the best of my ability of the proceedings (or all proceedings directed by counsel to be included in the Reporter's Record, as the case may be), in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this transcription of the record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the reporter's record cost $55.50 and was paid for by Mr. Davis, Defendant.

WITNESS MY OFFICIAL HAND this the 29th day of June, 2015.

/s/Wendy Wilkerson
CSR: 5744 Exp: 12/31/15
Official Court Reporter
County Court at Law No. 1
130 Marina Rd. AN
Crockett, Texas 75835
(281) 507-3422