**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed June 11, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00408-CV

---

### IN RE JENNIFER AISLINN GRANT, Relator

---

**ORIGINAL PROCEEDING
WRIT OF MANDAMUS
245th District Court
Harris County, Texas
Trial Court Cause No. 2016-22196 & 2016-22196B**

---

## MEMORANDUM OPINION

On June 12, 2023, relator Jennifer Aislinn Grant ("relator" or "Jennifer") filed a petition for writ of mandamus in this Court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this Court to compel the Honorable Angela M. Lancelin, presiding judge of the 245th District

Court of Harris County, to: (1) vacate the March 31, 2023 default temporary orders in suit to modify parent-children [sic] relationship; (2) strike the intervention suit filed by real parties in interest seeking to modify the parent-child relationship; (3) rule on relator's pending motions; and (4) assess all amicus attorney's fees and costs against the real parties in interest. As set forth below, we conditionally grant mandamus relief.

## BACKGROUND

After eleven years of marriage, on March 9, 2018, relator divorced Robert Steven Sobel ("Sobel" or "father"). The final decree of divorce appointed relator and father as joint managing conservators with no other parties to those orders that pertain to the parent-child relationship of relator's two children–a daughter ("Child 1) and a son ("Child 2"). Father was awarded the exclusive right to designate the primary residence of the children. Relator was awarded possession and access pursuant to a modified standard possession order.

On January 5, 2023, father died after several months of a deteriorating illness. After father's passing, relator moved into their former marital residence with the children. On January 11, 2023, after receiving information concerning the health and safety of her daughter, relator sought to have her daughter admitted to an in-patient treatment facility. The facility, however, lacked bed availability that night. Relator contends that due to her concern for the safety of her younger son, relator allowed father's law firm's paralegal, real party in interest Misty Dawn Runyon ("Misty"), and the paralegal's husband, real party in interest Kristopher Damon Runyon (collectively "RPIs"), who are not related to the children, to take relator's daughter to their house to await an available bed for admission.

2

***January 24, 2023 Petition to Modify Suit Affecting the Parent-Child
Relationship***

Unbeknownst to relator, approximately three weeks later, on January 24, 2023, RPIs filed a "Petition to Modify Suit Affecting the Parent-Child Relationship," seeking custody of relator's daughter. In the petition, under "parties," RPI pleaded as follows:

> Intervenors are a husband and wife, the wife having being selected by the children's deceased father as an individual to functions [sic] as guardian over his child of the child the subject of this suit. Intervenors have standing to intervene in this proceeding as more fully detailed below

Under "Jurisdiction," RPIs pleaded that "[t]his Court has acquired and retains continuing, exclusive jurisdiction over this suit and of the child the subject of this suit as a result of prior proceedings." Under the heading "Protective Order Statement," RPIs pleaded that there was no protective order in effect and that the "order to be modified is based on an agreement."[1] RPIs asserted that "[t]he circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of the signing of the agreement on which the order to be modified is based." RPIs maintained that "[t]he conservator who has the exclusive right to designate the primary residence of the child is deceased and the other parent voluntarily relinquished the primary care and possession of the child to another person . . .."

In support of their petition, Misty filed an unsworn declaration, wherein she explained the circumstances on January 11, 2023, when she took possession of

---

[1] RPIs presumably are referencing the final divorce decree between father and relator.

relator's daughter. Additionally, in the unsworn declaration, Misty alleged the following:

> After the divorce Jennifer did not exercise her normal visitation with the kids. [Child 1] has seen Jennifer maybe once a year in the last 2 years before Robert got hospitalized. When he was hospitalized, I had to be the one to make sure [Child 1] was okay because she was at his bedside and didn't want to have anything to do with Jennifer. CPS was called by Jennifer and closed the case after they talked to [Child 1] and Robert.

> There is a will that was left by Robert stating that I am listed as second to take care of the children if he passes. I am hoping the court will take that into consideration.

Misty further alleged that [Child 1] requires daily medicine which Misty alleged that she is providing and that [Child 1] had head lice which has been taken care of. Moreover, Misty alleged that relator was actively using drugs in excess of those for which she has a valid prescription and had a "strained, combative relationship with [Child 1], and "rarely exercised her possession and access of [Child 1] while her father was alive." "It's my understanding that Jennifer exercised possession and access of [Child 1] a couple of times a year over the last few years." Misty opined that it would not be in the best interest of [Child 1] to go back to relator and that "possession and access and conservatorship rights beyond those provided in the current order of the court . . . would significantly impair the child's physical health or emotional development.[2]

---

[2] In her unsworn declaration, Misty alleged that relator's son [Child 2] "stays with his maternal grandmother a lot and has a great relationship with her." According to Misty, [Child 1] does not have that support because she does not get along with her maternal grandmother."

***February 1, 2023, Joint and Mutual Restraining Order and Order Setting
Hearing for Temporary Orders***

On February 1, 2023, the trial court signed a "Joint and Mutual Restraining Order and Order Setting Hearing for Temporary Orders." The order provides that "[t]he Court examined the pleadings of [RPIs] and finds that [RPIs] is [sic] entitled a joint and mutual temporary restraining order." Relator's daughter, [Child 1], was to be taken into the possession of RPIs. Relator was "excluded from possession of or access to [her daughter] beyond her periods of possession already granted by the Court." Additionally, relator was restrained from admitting her daughter, [Child 1], into an in-patient treatment facility. The trial court set a hearing for March 7, 2023.

On or about February 5, 2023, relator was seriously injured as a passenger while riding on an ATV with her son. Relator was placed into a medically induced coma.[3] According to relator, while she was in the hospital, relator's mother and stepfather allowed relator's son, [Child 2], to go to the RPIs' house to be with his older sister, [Child 1].

***February 10, 2023 First Amended Petition to Modify Suit Affecting the Parent-
Children Relationship***

On February 10, 2023, RPIs filed a "First Amended Petition to Modify Suit Affecting the Parent-Children Relationship," seeking as to both children an appointment as non-parent sole managing conservators and alternatively, appointment as non-parent joint managing conservators having the exclusive right to designate the primary residence of relator's children, and for orders allowing the

---

[3] It is not clear from the mandamus record when she was released from the hospital.

RPIs to have possession of and access to relator's children. In their amended petition, RPIs pleaded that they were "selected by the children's deceased father as an individual to functions [sic] as guardian over his children of the children of this suit." RPIs alleged that they "have standing to intervene in this proceeding as more fully detailed below." RPIs pleaded the same statement under "jurisdiction," *i.e.*, that the trial court retained continuing, exclusive jurisdiction of this suit and the children based on prior proceedings. The amended petition further alleged under the heading "circumstances of modification" that relator "voluntarily relinquished the primary care and possession of the children to another person . . .." RPI pleaded that it is in the best of the children to appoint RPIs joint managing conservators of the children with the right to designate the children's primary residence. RPIs claimed that "appointment of a parents [sic] as joint managing conservators would not be in the best interest of the children because the appointment would significantly impair the child's physical health or emotional development."

Additionally, in support of the first amended petition, Misty filed "an amended unsworn declaration in support of extraordinary relief and temporary emergency jurisdiction." In the amended unsworn declaration, the same facts were alleged as to relator's daughter, [Child 1]. With respect to relator's son, [Child 2] Misty alleged that relator was taken "off the ventilator as of February 7, 2023, but remains in ICU under sedation to continue her recovery from the accident. I am asking for [Child 2] to be place [sic] in my husband and I's possession until she is able to take care of him." Misty declared that he had been with her since the

accident happened and did not want to go to his maternal grandmother's home. Misty opined that it was in [Child 2's] best interest for the children to stay together.

### *February 14, 2023, First Amended and Mutual Temporary Restraining Order and Order Setting Hearing for Temporary Orders*

On February 14, 2023, the trial court signed a "First Amended and Mutual Temporary Restraining Order and Order Setting Hearing for Temporary Orders." The hearing was set for March 7, 2023. According to relator, these documents were filed without relator's knowledge or consent.

On or about February 12, 2023, the children's maternal grandparents called RPIs to discuss the return of their grandson, [Child 2].[4] Misty allegedly told grandparents that their grandson "asked if he could stay [with RPIs] until his mom is better and I told him yes. And that's what's gonna happen. Okay? Technically, I have a shit ton of rights. I am in the will to step into Sobel's place for the children. So technically I can."

The mandamus records contains two affidavits of service declaring that relator was served on February 28, 2023 with the first amended petition to modify suit affecting the parent-child relationship, the temporary restraining order, the first amended joint and mutual temporary restraining orders and order setting hearing for temporary orders, and exhibits.[5] On March 1, 2023, relator sent RPIs' attorney

---

[4] The mandamus record contains a transcript of an alleged "nonstenographic digital recording or a telephone conversation" between grandparents and RPIs on February 12, 2023.

[5] On July 30, 2023, the process server filed a "Declaration Regarding a Typographical Error in Affidavit of Service," asserting that she received the referenced documents on February 26, not February 2 as set forth in her affidavit of service.

an email asserting that the process server failed to serve her with several documents and relator requested a copy of every pleading filed to date.

### March 7, 2023 Hearing

On March 7, 2023, the trial court held a "prove up default hearing." RPIs appeared in person at the hearing. Relator was not present at the hearing. The trial court accepted into evidence two affidavits of service and made the following findings in the record.

> THE COURT: Okay. So the Court is going to find that the affidavits of service indicate that Jennifer Grant was served with the First Amended Petition to Modify the Suit affecting the Parent-Child relationship on Tuesday, February 28th, 2023, and also served with TRO along with the request for joint mutual restraining orders and an order setting hearing for today's date. She was also served with that on February 28, 2023. The Court is going to accept these exhibits and move forward by default.

Misty testified at the hearing.

> Q. And what is your relationship, generally, with the children in this case, [Child 1] and [Child 2]
>
> A. Family friend.
>
> Q. Okay. Have you – prior to the present, have you previously cared for the children?
>
> A. Yes.
>
> Q. All right. And approximately when was that?
>
> A. From 2014 until 2021.
>
> Q. Okay. And how did you care for the children in that time period?

8

A. I was an employee of the children's father, who is current – who is deceased. I took care of the kids, took them to school, did basic stuff after the divorce case was done between the two parties.

Q. And are you currently in possession of the children?

A. Yes.

Q. All right. When did you – what circumstances led to you taking possession of Child 1.

A. Her mother tried to commit her to a mental hospital . . . on January 11th. I met them over there at 5:00 o'clock when I got off of work, and they couldn't find a bed for her, and so they released her into Jennifer's custody, which is Mom, and they told us that if Jennifer was going to let [Child 1] go with us, that we had to do the exchange in the parking lot. So we did. I left with [Child 1] on that night, and she's been with me ever since.

Q. An under what circumstances did you come into possession of [Child 2]

A. [Child 2] and Jennifer were on four-wheelers and got into a four-wheeler accident. Neither one were wearing helmets. [Child 2] was driving, and he hit a log and Jennifer flew up and face-planted a tree and she ended up in ICU.

The trial court also admitted three exhibits into evidence, including: photographs of father's home; two affidavits of service; and father's last will and testament dated August 29, 2019.[6] RPIs requested sole managing conservatorship of

---

[6] Father's will contained a "guardian nomination" that provided as follows:

I nominate my sister, Randee Sobel, to be the guardian of the person and estate of each minor child or mine.

If at any time during the minority of any child of mine, my first nominee guardian is for any reason unable or unwilling to serve or to continue to serve as guardian of the person and estate of each minor child, I nominate my friend, Misty Runyon, to be the guardian of the person and estate of each minor child of mine.

relator's children or, in the alternative, to be designated as joint managing conservators with the right to designate the primary residence.

### March 7, 2023 "Bandaid Visitation Order"

The trial court signed a "Bandaid Visitation Order," granting temporary custody of the two children to RPIs and giving relator "possession and access of the children as mutually agreed or in the absence of mutual agreement though the Harris County Domestic Relations Office." The trial court also entered an Order for Mediation by the Domestic Relations Office on March 7, 2023.

More than a week later, relator received by mail to her home the Bandaid Visitation Order together with a document entitled, "Notice of Attorney Michael Krocker's [opposing counsel] Email Address" and "Order for Mediation by the Domestic Relations Office." Additionally, relator received a notice of submission for entry of temporary orders for March 31, 2023.

### March 31, 2023 Default Temporary Orders in Suit to Modify Parent-Child Relationship

On March 31, 2023, the trial court signed "Default Temporary Orders in Suit to Modify Parent-Children [sic] Relationship." Under the heading of "Jurisdiction" the trial court found the following:

> The Court, after examining the record, and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been legally satisfied and that this Court has jurisdiction of this case and of all the parties.

This Default Order appointed RPIs Temporary Sole Managing Conservators and relator Temporary Possessory Conservator of the children. RPIs approved and consented to this Order as to both form and substance.

10

On April 7, 2023, relator claims that she received a postcard from the office of the Harris County District Clerk advising her that an order granting temporary injunction was signed on March 31, 2023.[7]  Thereafter, relator filed a plethora of motions and documents seeking a dismissal of RPIs' suit.  On April 11, 2023, relator filed a special appearance, plea to the jurisdiction, request to decline jurisdiction, original answer with affirmative defenses, request for referral for prosecution for perjurious acts, and motion for sanctions for frivolous filing.  Relator included an affidavit in support and numerous exhibits.  Relator affirmatively pleaded that the RPIs "wholly lacked standing to even bring their suit to modify, let alone obtain a temporary order affecting [relator's] parental rights."  Relator also filed an emergency motion for dissolution of the default temporary orders, arguing among other points, that RPIs lacked the statutorily required standing and that relator had not voluntarily relinquished primary care and possession of her children to RPIs.  Relator attached to her emergency motion an affidavit in support and numerous exhibits.  On April 30, 2023, relator filed an emergency motion to disqualify opposing counsel and his law firm.  Moreover, on May 4, 2023, relator filed a "Petition for Writ of Habeas Corpus to Return Children and Request for Writ of Attachment."

### *May 12, 2023 Hearing*

On May 12, 2023, the trial court conducted a hearing on relator's motion to dissolve the temporary restraining order.  Relator's counsel conceded that relator was served with a temporary restraining order and with the notice of hearing but

---

[7]  According to relator, it was not until April 21, 2023, that opposing counsel provided the default temporary orders to relator.

not the motion itself. Additionally, relator's counsel argued that relator is the sole surviving parent of the children and RPIs have no standing. She further maintained that the TRO should be dissolved because it was not in the best interest of the children, claiming that the older child had missed cumulative over 102 days of school since September 2022. The trial court interjected that it had not been 102 days since RPIs got the TRO. Relator's counsel replied "No, I know but they've had the children before then, Your Honor." In response, the trial court stated, "No, I don't know that but that's not – if they did, then they've had – they would have sufficient standing but thank you for clarifying that for me." Thereafter, RPIs' counsel asserted that there was not a motion to serve on relator; rather, there was a first amended petition and a first amended temporary restraining order. RPIs' counsel stated that the process server was present at the hearing and prepared to testify to verify service on relator. RPIs' counsel further opined that "I believe the Court found that the – Runyons have standing and the Court granted the temporary order in this case."

> THE COURT: . . . the Court is going to find that as to improper service, that is not the appropriate means to challenge service. If you, in fact, believe that service was defective, dissolving – the answer to that is not to dissolve the TRO.
>
> Based on your testimony, Counsel, and with regard to the children were there prior for more than – or have been with them prior to the filing of this and for quite some time based on the testimony I previously heard, I would stand firm on the fact that I found that they had – they have proper standing to come in and file this – action.

12

After sorting though additional matters in the case,[8] the trial court suggested the following:

> THE COURT: Okay. So my question, although it may sound odd, it would appear to me that the appropriate thing with regard to what is before me in all of these writings is that perhaps you all should – someone, not you, but file a motion to modify temporary orders so you can get back in here. I can't really – there's nothing before the Court that gives me the authority on the basis of any of the pleadings filed to undo, set aside, dissolve or do anything with that temporary order.

The trial court contended that "if that was the complaint, then the Court can't move forward unless there's a different request made." Based on the filings and the multitude of documents, the trial court advised the parties that she believed that appointing an ad litem for the children was going to be appropriate.

### *May 12, 2023 Joint and Mutual Temporary Injunctions*

On May 12, 2023, the trial court entered "Joint and Mutual Temporary Injunctions" that enjoined certain behavior of the respective parties. The attorneys on behalf of both sides, agreed to the order as to form only.

After the hearing, relator filed several additional motions, including a "Verified Emergency Briefed Motion to Find Prima Facie [RPIs'] Failure to Serve

---

[8] It appears that relator filed numerous motions, including but not limited to: a special appearance, pleas to the jurisdiction, request to decline jurisdiction, answer with affirmative defenses, request for referral for prosecution for perjurious acts, and a motion for sanctions. RPIs filed a motion to strike pleading due to the multitude of evidentiary facts contained in the documents. RPIs requested that relator be ordered to replead her emergency motion to dissolve temporary orders, brief in support, and motion for sanctions. Relator also filed a countermotion to strike. During the May 12, 2023 hearing, relator's counsel agreed to replead everything.

[relator] with Process and Emergency Motion to Declare Void: Default Temporary Orders in Suit to Modify Parent-Children Relationship (Entered March 31, 2023)."

This petition for writ of mandamus followed.[9] Subsequently, relator filed amended petitions, with relator's third amended petition for writ of mandamus identifying fifteen issues. After receiving several extensions, RPIs filed a response and a second amended response to relator's petition for writ of mandamus. Thereafter, relator filed a reply in support of her petition and an eighth amended appendix.

### STANDARD OF REVIEW

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion, and that the relator has no adequate remedy by appeal. *In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020) (orig. proceeding). Trial courts have no discretion in determining what the law is or applying the law to the facts. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875–76 (Tex. 2021) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (failure by the trial court to apply the law correctly constitutes an abuse of discretion). Where the relator challenges the trial court's subject matter jurisdiction to enter a temporary order in a suit affecting the parent-child relationship, a remedy by appeal is inadequate. *See Little v. Daggett*, 858 S.W.2d 368, 369 (Tex. 1991); *see also In re Ostrofsky*, 112 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (temporary orders are interlocutory with no statutory appeal).

---

[9] In her 8th amended appendix to her petition for writ of mandamus, relator has included numerous pleadings filed in the underlying court after filing her petition for writ of mandamus.

Therefore, temporary orders are subject to mandamus review. *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (orig. proceeding) (per curiam).

## ANALYSIS

### A. STANDING

Standing is an issue that focuses on whether a party who has filed an action is a proper party to raise the legal issue presented for adjudication. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993); *see also Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). Standing is an implicit component of subject matter jurisdiction and is essential to a court's power to decide a case. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443; *see also M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). Because the requirement is a component of subject matter jurisdiction, standing to file suit is not conferred or obtained by waiver, and can be challenged at any time. *Tex. Ass'n of Bus.*, 852 S.W.2d at 443-445.

Whether a party has standing to maintain a suit is a question of law, which we review de novo. *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). The pleader must allege facts that, taken as true, affirmatively demonstrate the court's jurisdiction to hear the cause. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Besides the pleadings, we may also consider relevant evidence and must do so when necessary to resolve the jurisdictional issues raised. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.

**B.** **REAL PARTIES IN INTEREST FAILED TO PROVE STANDING**

In her petition, relator asserts, among other issues, that RPIs lacked standing to file an original suit requesting appointment as a sole managing conservators. Thus, relator argues that the trial court's default temporary orders signed March 31, 2023, are void and should be vacated.

In their second amended response to the petition for writ of mandamus, RPIs assert that relator has not requested a ruling (either by hearing or submission) to issues raised by relator in her petition, including issues 1, 2, 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, and 16. RPIs further maintain that "[t]he trial court considered sufficient evidence to satisfy the requirements of Texas Family Code Sections 156.002(b), 102.003(a)(9), and 102.003(b)." RPIs claim that Misty "has been involved in the children's lives for at least 7 years." RPIs further argue that:

> Relator did not appear at the hearing and therefore did not make objections or present testimony in support of her case. That would have been the opportunity to properly do so. Real Parties in Interest had actual and personal knowledge of the issues with the children subject of this suit as one child had already been in their possession since January 11, 2023 and the second child in their possession since February 5, 2023.

As a threshold matter, the interest of parents in the "care, custody, and control" of their children is a fundamental liberty interest of constitutional dimensions. *See In re K.K.C.*, 292 S.W.3d 788, 792 (Tex. App.—Beaumont 2009, orig. proceeding) (citations omitted). Section 102.003(a)(9) of the Family Code, the provision RPIs rely upon, provides that "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" may

16

file an original suit requesting managing conservatorship. *See* Tex. Fam. Code § 102.003(a)(9). This section requires that the RPIs have "actual care, control, and possession of the child[ren]." *See id*. "Control" has been interpreted as referring to the power or authority to guide and manage and includes the authority to make decisions of legal significance for the children. *See In re K.K.C.*, 292 S.W.3d 788, 793 (Tex. App.—Beaumont 2009, orig. proceeding) (citing cases).

Here, RPIs pleadings do not demonstrate RPIs' standing to intervene and modify the suit affecting the parent-child relationship as they did not allege the statutory requirements of "care, custody, and control." It is undisputed that RPIs did not have possession of the daughter and son until January 11 and February 5, 2023, respectively. Misty's original and amended unsworn declarations make no reference to possession of the children until after father died. Nevertheless, on the face of their pleadings, the trial court considered RPIs petitions and signed temporary restraining orders on February 1 and 10, 2023, before relator was served with select pleadings on February 28, 2023.

Additionally, neither the testimony nor exhibits admitted into evidence at the hearing on March 7, 2023, supported RPIs standing. Misty testified that her relationship to the children was as a "family friend," and that Misty had previously "cared" for the children from 2014 to 2021. During that time-period, while an employee of father, Misty testified that she "took care of the kids, took them to school, did basic stuff after the divorce." There was no testimony that she ever had possession or control of the children prior to January 11 and February 5, 2023, or even "cared" for the children in any context after 2021. Similarly, the exhibits admitted into evidence on March 7, 2023, do not provide RPIs standing. Pictures

17

of father's house in disarray,[10] two return of service affidavits of select documents on relator, and father's 2019[11] will are insufficient to establish RPIs standing. The fact that relator did not appear at the hearing and make objections to RPIs evidence and testimony does not relieve RPIs of their burden to establish standing. *See generally Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

In sum, RPIs did not plead or prove standing under section 102.003(9) to file the underlying action. *See* Tex. Fam. Code § 102.003(a)(9); *In re M.J.G.*, 248 S.W.3d 753, 757-58 (Tex. App.—Fort Worth 2008, no pet.). By incorrectly applying the law on standing, the trial court abused its discretion.

Further, relator has no adequate remedy by appeal. *See In re Haz Mat Special Servs.*, No. 14-23-00320-CV, 2023 WL 7401412, at *3 (Tex. App.— Houston [14th Dist.] Nov. 9, 2023, orig. proceeding) (conditionally granting mandamus relief when party asserting claim was determined to lack standing).

## CONCLUSION

Having determined that the trial court abused its discretion and relator does not have an adequate remedy by appeal, we conditionally grant relator's petition for writ of mandamus, as explained above, and direct the trial court to vacate the March 31, 2023 default temporary orders. We are confident the trial court will act

---

[10] Misty testified that the house smelled of cat urine, that cat feces were in [Child 1's] room, and that everything was pulled out of cabinets and all over the floor. There is no testimony as to whether the house had been maintained prior to father's death and there is no testimony as to whether living conditions in the house deteriorated with father's health.

[11] Although Misty "hoped" the trial court would take into consideration father's will, RPIs provide no authority for the proposition that father's will provides standing to RPIs in the underlying suit.

in accordance with this opinion and a writ will issue only if the trial court fails to do so.

PER CURIAM

Panel consists of Justices Jewell, Hassan, and Wilson.